**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| COMMISSIONER OF THE DEPARTMENT OF LICENSING AND CONSUMER AFFAIRS; and GOVERNMENT OF THE UNITED STATES VIRGIN ISLANDS,<br><br>Plaintiffs,<br><br>v.<br><br>PEPSICO, INC.;<br>PEPSICO CARIBBEAN, INC.;<br>THE COCA-COLA COMPANY; and<br>CC ONE VIRGIN ISLANDS, LLC,<br><br>Defendants. | Case No. 1:25-cv-00024 |

**DEFENDANTS PEPSICO, INC. AND PEPSICO CARIBBEAN, INC.'S**
**NOTICE OF REMOVAL**

Without submitting to the jurisdiction of this Court and without waiving any available defenses, Defendants PepsiCo, Inc. and PepsiCo Caribbean, Inc. (collectively, "PepsiCo") file this Notice of Removal from the Superior Court of the Virgin Islands, Division of St. Croix, pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.[1] Removal is appropriate under 28 U.S.C. § 1441(a) because this Court has original jurisdiction over this action, which arises under the laws of the United States, pursuant to 28 U.S.C. § 1331. In support of this Notice of Removal, PepsiCo states as follows:

---

[1] By removing this action to this Court, as detailed herein, no Defendant waives any defenses, objections, or motions available under any territorial, state, or federal law or rule. All Defendants expressly reserve the right to move to dismiss Plaintiffs' action in whole or in part on any ground, including but not limited to those listed in Federal Rule of Procedure 12(b) and Virgin Islands Rule of Civil Procedure Rule 12(b).

## COMPLIANCE WITH REMOVAL REQUIREMENTS

1. This Notice of Removal is timely because it is filed on May 19, 2025, within 30 days of PepsiCo, Inc.'s receipt of the Complaint by service on April 21, 2025, as required by 28 U.S.C. § 1446(b)(1). *See* Ex. A ¶¶ 5(b), (f); Ex. C; Ex. G.[2]

2. This action is properly removed to this Court, the District Court of the Virgin Islands, and venue is proper in this District—specifically, in the Division of St. Croix—because this matter was originally filed in the Superior Court of the Virgin Islands, Division of St. Croix, which is within the District of the Virgin Islands. *See* 28 U.S.C. § 1441(a); U.S. Virgin Islands Revised Organic Act of 1954 §§ 21–22.

3. All properly joined Defendants who have been served consent to removal as required by 28 U.S.C. § 1446(b)(2)(A). *See* Ex. A ¶¶ 4, 5(e)–(f), 6; Ex. H; Ex. I.

4. In accordance with 28 U.S.C. § 1446(a), Exhibits B–G comprise true and correct copies of all process, pleadings, and orders served upon Defendants in the Superior Court of the Virgin Islands before removal of this action.

5. In accordance with 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal in this Court, PepsiCo will serve on Plaintiffs Commissioner of the Department of Licensing and Consumer Affairs and Government of the United States Virgin Islands (collectively,

---

[2] To the undersigned counsel's knowledge, PepsiCo Caribbean, Inc. ("PepsiCo Caribbean") has not been served with summons or with a copy of the Complaint. Ex. A ¶¶ 4, 5(e)–(f). Nevertheless, out of an abundance of caution, PepsiCo Caribbean joins in this Notice of Removal as a signatory. *See, e.g.*, *Novak v. Bank of N.Y. Mellon Trust Co.*, 783 F.3d 910, 912 (1st Cir. 2015) ("[A] defendant generally need not wait until formal receipt of service to remove."). In doing so, PepsiCo Caribbean does not waive or forfeit any defense, including insufficient process or insufficient service of process. *See, e.g.*, *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 132 (3d Cir. 2020) ("[It] is now hornbook law: 'A party who removes an action from a state to a federal court does not thereby waive any of his or her Federal Rule 12(b) defenses or objections.' … On removal, a defendant brings its defenses with it to federal court." (quoting 5C Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1395 (3d ed. 2019))).

"USVI") a written copy of this Notice of Removal and will file a copy of this Notice of Removal with the Clerk of the Superior Court of the Virgin Islands.

## BACKGROUND

6.  On April 11, 2025, USVI commenced civil action no. SX-2025-cv-00102 in the Superior Court of the Virgin Islands, Division of St. Croix, against PepsiCo, Inc.; PepsiCo Caribbean, Inc.; The Coca-Cola Company; and CC One Virgin Islands, LLC (collectively, "Defendants") by filing the Complaint ("Complaint" or "Compl."), a true and correct copy of which is attached hereto as Exhibit B.

7.  USVI's Complaint seeks to hold Defendants responsible for the recycling, disposal, and management of plastic waste in the Virgin Islands, an issue that has been the subject of longstanding federal litigation and ongoing obligations imposed on USVI by a federal court in this District. In particular, the Complaint expressly incorporates and relies on two federal consent decrees between the Government of the U.S. Virgin Islands, a Plaintiff in this action, and the United States. *See, e.g.*, Compl. ¶¶ 33–34 & n.35, ¶ 98.[3]

8.  These federal consent decrees govern the U.S. Virgin Islands' Anguilla and Bovoni landfills. *See* Ex. J ("Anguilla Consent Decree"); Ex. K ("Bovoni Consent Decree"); Ex. L (Order approving Anguilla Consent Decree); Ex. M (Order approving Bovoni Consent Decree).

---

[3] The two federal consent decrees expressly incorporated in USVI's Complaint are not the first such decrees between the United States and the U.S. Virgin Islands. *See* Aldeth Lewin, *Port Authority: Waste Management Must Heed Landfill Deadline*, Virgin Islands Daily News (Oct. 21, 2011) ("[T]he U.S. Environmental Protection Agency has multiple consent decrees against the V.I. government, some dating back 25 years, to bring Anguilla Landfill into compliance …."), https://tinyurl.com/yzeatk3d.

9. The consent decrees originate from the action captioned *United States v. Government of the Virgin Islands*, No. 3:10-cv-00048-RAM-RM (D.V.I. filed Nov. 22, 2010). The United States' amended complaint in that action is attached as Exhibit N ("U.S. Amend. Compl.").

10. In 2006, the U.S. Environmental Protection Agency issued a compliance order finding that the Government of the U.S. Virgin Islands, through its operations of the Anguilla and Bovoni landfills, violated federal law, including the Clean Air Act by, among other things, conducting "improper waste management practices" that "presented an imminent and substantial endangerment to health and the environment." U.S. Amend. Compl. ¶¶ 1, 65, 78, 80–81, 92–93; *see also* 77 Fed. Reg. 18266, 18266 (Mar. 27, 2012) (the U.S. Department of Justice stating that its action against the U.S. Virgin Islands sought relief "for the failure by the Government of the Virgin Islands … to operate the Bovoni Landfill … in compliance with the … Clean Air Act"); 78 Fed. Reg. 4438, 4438 (Jan. 22, 2013) (same with respect to "the Anguilla Landfill").

11. According to USVI's Complaint against Defendants here, the two federal consent "decrees required the Virgin Islands to stop accepting waste at Anguilla and Bovoni [landfills] by 2018 and 2019, respectively, and implement mitigation measures, such as recycling programs." Compl. ¶ 33; *see also* Bovoni Consent Decree ¶ 33; 77 Fed. Reg. at 18266 (the U.S. Department of Justice stating that the Bovoni Consent Decree requires the U.S. Virgin Islands to "implement a waste diversion/recycling program"); 78 Fed. Reg. at 4438 (same with respect to the Anguilla Consent Decree). The consent decrees also require the U.S. Virgin Islands, after the landfills' closures, to "conduct post-closure care" in accordance with certain federal regulatory requirements. Anguilla Consent Decree ¶ 24.

12. The recycling program mandated by the consent decrees includes "education of the public" through "outreach to homes, commercial establishments and schools" by issuing "written

materials, public service announcements, and [by holding] group meetings." Anguilla Consent Decree ¶ 36; Bovoni Consent Decree ¶ 33(a)(1). The recycling program applies "to the public on St. Croix to the same extent that it applies to the public on St. Thomas." Anguilla Consent Decree ¶ 36.

13. Each federal consent decree also requires the U.S. Virgin Islands to pay "$50,000 as a civil penalty." Anguilla Consent Decree ¶ 8(a); Bovoni Consent Decree ¶ 8(a).

14. The obligations imposed by the federal consent decrees are ongoing and "may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change … , it shall be effective only upon approval by the Court." Anguilla Consent Decree ¶ 100; Bovoni Consent Decree ¶ 96. The federal court in this District expressly retained jurisdiction "until termination" of the consent decrees "for the purpose of resolving disputes arising under" the decrees, "entering orders modifying" the decrees, and "effectuating or enforcing compliance with the terms" of the decrees. Anguilla Consent Decree ¶ 99; Bovoni Consent Decree ¶ 95.

15. USVI has not followed through on its obligations under the consent decrees, declaring in its Complaint that the Anguilla and Bovoni landfills are now planned for closure in "2026 and 2028" and are "still accepting waste." Compl. ¶ 34; *see also EPA Official Says Lawsuit Will Help Close Landfills*, VI Source Network (Aug. 13, 2010), https://visourcearchives.com/content/2010/08/13/epa-official-says-lawsuit-will-help-close-landfills (Carl Axel Soderberg, then-director of the U.S. Environmental Protection Agency's Caribbean Environmental Protection Division, stating: "Yes, [the U.S. Virgin Islands] have made promises to comply, but they have failed to comply with their promises.").

16. Further, on information and belief, USVI has failed to create household or business waste diversion programs—as required by the consent decrees, *see* Anguilla Consent Decree ¶ 36; Bovoni Consent Decree ¶ 33(a)(3)—that would divert plastic waste, including recyclable plastic waste, from the Anguilla and Bovoni landfills. USVI's Complaint implicitly acknowledges that it has failed to comply with the consent decrees, stating that, until 2018 or 2019, "recycling was largely nonexistent" in the U.S. Virgin Islands and that the only recycling presently done in the territory is through the efforts of "volunteers, private businesses, and nonprofit organizations." Compl. ¶ 31.

17. USVI has now sued Defendants, asserting legal theories that are closely intertwined with, and will require interpretation of, the terms of the federal consent decrees. For example, the Complaint attributes the ongoing "waste management crisis" in the Virgin Islands to "Defendants' conduct in falsely promoting and distributing single-use plastic." Compl. ¶ 32. It alleges that Defendants, by "purposefully manufacturing" bottled beverages "without implementing or paying for an environmentally responsible way to dispose of them," "have shifted the burden of dealing with plastic waste on to the government and people of the Virgin Islands." *Id.* ¶ 35. And it alleges that "the explosion of single-use plastic products" has caused the continued operation of the Anguilla and Bovoni landfills that "were supposed to shut down in 2018 and 2019" pursuant to the terms of the consent decrees. *Id.* ¶ 98.

18. USVI's Complaint asserts three causes of action against the various Defendants: Violation of 12A V.I.C. § 101 (Count One), Violation of 12A V.I.C. § 304 (Count Two), and a Common Law Claim for Public Nuisance (Count Three). Compl. ¶¶ 88–102. All three Counts expressly incorporate the Anguilla and Bovoni Consent Decrees. Compl. ¶¶ 33–34 & n.25, 88, 90, 92, 98.

19.   USVI seeks a declaration, monetary damages, civil penalties, an injunction, and an order "providing for abatement of the public nuisance that Defendants created." Compl. Prayer for Relief ¶¶ A–G.

## BASIS FOR REMOVAL JURISDICTION

20.   The Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367. This action may therefore be removed to this Court under 28 U.S.C. §§ 1441 and 1446.

21.   Section 22 of the U.S. Virgin Islands Revised Organic Act of 1954 provides: "The District Court of the Virgin Islands shall have the jurisdiction of a District Court of the United States …."

22.   Section 23 of the U.S. Virgin Islands Revised Organic Act of 1954 provides: "The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to … removal of causes … shall be governed by the laws of the United States pertaining to the relations between the courts of the United States … and the courts of the several States in such matters and proceedings."

23.   As detailed below, this action arises under the laws of the United States because all three counts of the Complaint necessarily involve substantial questions of federal law by virtue of the counts' express incorporation of and reliance on the Anguilla and Bovoni Consent Decrees, and collaterally attack the two federal court orders approving the consent decrees. *See* 28 U.S.C. § 1331.[4]

---

[4] The United States is also likely a required party to this action under Federal Rule of Civil Procedure 19(a)(1) and Virgin Islands Rule of Civil Procedure 19(a)(1). USVI's failure to join the United States under Rule 19 provides a basis for dismissal under both Federal Rule of Civil Procedure 12(b)(7) and Virgin Islands Rule of Civil Procedure 12(b)(7). As detailed elsewhere, by filing this Notice of Removal, Defendants expressly reserve all available defenses and objections.

24. Alternatively, if the Court were to conclude that only Count Three (public nuisance) arises under the laws of the United States, Counts One and Two are within the supplemental jurisdiction of this Court because they are so related to Count Three that they form part of the same case or controversy under Article III. *See* 28 U.S.C. § 1367(a).

25. Because this Court has original and supplemental jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a), this action may be removed under § 1441(a).

    A.    **USVI's Complaint Raises Federal Issues Under *Gunn–Grable***

26. For purposes of 28 U.S.C. § 1331, an action "arises under" federal law if a federal issue is (1) necessarily raised by the complaint; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal–state[5] balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)). Here, all three counts in USVI's Complaint satisfy these conditions, and the Complaint is removable under 28 U.S.C. §§ 1331 and 1441(a).

<u>Necessarily Raised and Actually Disputed</u>

27. At least three federal issues are necessarily raised by USVI's Complaint and are actually disputed by the parties.

28. First, USVI's purported reliance on territorial-law causes of action in an attempt to pass off its federal consent-decree responsibilities, including those related to recycling and waste management and diversion programs, to Defendants "necessarily call[s] into question the Court's

---

[5] Section 23 of the U.S. Virgin Islands Revised Organic Act of 1954 provides that removal of an action from the Superior Court of the Virgin Islands to the District Court of the Virgin Islands shall be governed by the federal laws governing removal of actions from state court to federal court. *See supra* ¶ 22. As used herein, a "state" includes the U.S. Virgin Islands, and a "state court" includes the Superior Court of the Virgin Islands.

power to enforce" the decrees. *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 275 (E.D. La. 2021). Whether the consent decrees may be modified and USVI's duties delegated to Defendants is a federal question that is necessarily raised by USVI's Complaint. As noted above, the decrees themselves provide that they "may be modified only by a subsequent written agreement signed by all the Parties," and if the modification is "material," "it shall be effective only upon approval by the Court." Anguilla Consent Decree ¶ 100; Bovoni Consent Decree ¶ 96. The court that presides over this action will therefore need to construe the consent decrees and determine how to apply them here, necessarily raising a federal question.

29. Defendants dispute that USVI may delegate its obligations under the consent decrees to Defendants. *See* Anguilla Consent Decree ¶ 100; Bovoni Consent Decree ¶ 96.

30. Second, USVI's Complaint seeks a court order "providing for abatement of the public nuisance [of plastic pollution] that Defendants created." Compl. Prayer for Relief ¶ E. USVI's requested abatement of plastic pollution is inseparable from its obligations under the consent decrees, including its obligations to close the Anguilla and Bovoni landfills, to conduct post-closure care of those landfills, to implement mitigation measures such as recycling programs, and to educate the public on St. Croix and St. Thomas through outreach and written publications, among other methods. *E.g.*, Compl. ¶ 33; Anguilla Consent Decree ¶¶ 24, 36; Bovoni Consent Decree ¶ 33. Thus, if USVI were to prevail and the requested injunctive relief granted, "such relief must be crafted with the requirements of the Consent Decree[s] firmly in mind," a consideration that necessarily raises another federal question. *Herrold v. Contigroup Cos.*, No. 04-00618-CV-W-GAF, 2005 WL 8158999, at *2 (W.D. Mo. July 26, 2005).

31. Defendants dispute that USVI is entitled to any relief, including abatement.

9

32. Third, to prevail on its public nuisance claim, USVI will have to prove that Defendants caused and created "an unreasonable interference with a right common to the general public"—i.e., that Defendants caused plastic pollution in USVI through their manufacture, bottling, distribution, and/or sale of single-use plastic bottles. *See* Compl. ¶¶ 93, 95–96; *see also Gov't of U.S.V.I. v. Takata Corp.*, No. ST–16–CV–286, 2017 WL 3390594, at *42 (Sup. Ct. V.I. June 19, 2017) ("[C]ourts also require the plaintiff make some showing of causation that links the defendant to the creation or maintenance of the public nuisance."). USVI will be unable to do so because the asserted harm is not caused by Defendants at all—the harm, if any, is rather caused by USVI's longstanding violations of federal laws and failure to comply with its obligations under the expressly incorporated federal consent decrees. Thus, a key question in this action is whether USVI's violation of the consent decrees is the legal cause of the injuries it alleges here. The court that adjudicates this action must therefore interpret the consent decrees and USVI's noncompliance with them, which necessarily raises a federal question.

33. Defendants dispute that they—as opposed to USVI or third parties—caused or created any public nuisance, harm, or statutory violation alleged by USVI's Complaint.

34. Accordingly, the "resolution of this action implicates the consent decree[s]" because "allow[ing] the plaintiffs to proceed in state court could seriously thwart the purposes" of those decrees. *Carr v. Ala. Dep't of Hum. Res.*, No. 96–D–1153–N, 1996 WL 795269, at *4 (M.D. Ala. July 30, 1996) (denying remand to state court). Indeed, it "cannot be ignored" that USVI's claims against Defendants here "are based upon behavior that is dictated in and regulated by" the consent decrees. *Herrold*, 2005 WL 8158999, at *2; *see also Abadam v. Hawaii*, No. 99-15028, 2000 WL 33122830, at *2 (9th Cir. Jan. 18, 2000) ("Whether defendants violated the terms of the Federal Consent Decree is a question necessarily governed by federal law."); *People ex rel. Leli v.*

*Desimone*, No. 95 C 3250, 1995 WL 642837, at *3 (N.D. Ill. Oct. 27, 1995) (upholding removal jurisdiction because granting the requested relief "could have a direct effect upon the implementation and enforcement" of a federal consent decree).

35. USVI's Complaint therefore necessarily raises at least three federal issues that are actually disputed.

Substantial

36. The federal issues necessarily raised by USVI's Complaint and actually disputed by the parties are substantial within the meaning of the *Gunn–Grable* test.

37. The substantiality inquiry asks not whether the federal issues are substantial to the parties but "looks instead to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260.

38. The federal issues here are substantial for multiple reasons.

39. First, "federal agencies negotiated the consent decree[s]." *United States v. City of Loveland*, 621 F.3d 465, 472 (6th Cir. 2010). The enforcement and interpretation of the consent decrees therefore "affects the authority of the Department of Justice to enter into consent decrees, and the federal government has a 'direct interest in the availability of a federal forum to vindicate its' authority." *City of New Orleans*, 572 F. Supp. 3d at 277 (quoting *Grable*, 545 U.S. at 315).

40. Second, the consent decrees were and are "intended to comply with [two] federal statute[s]"—the Clean Air Act and the Resource Conservation and Recovery Act—and the decrees "impact[] thousands" of people. *Loveland*, 621 F.3d at 472; *see* U.S. Amend. Compl. ¶¶ 1–2.

41. Third, "the resolution of [USVI's] obligations, if any, under the consent decree[s] will resolve the case because whether [USVI] may … terminate or modify its obligations under the consent decree[s] are dispositive, not incidental, issues." *Loveland*, 621 F.3d at 472.

42. Fourth, "the decision on the federal question[s] will have a broad impact because, depending on the outcome of this litigation, other entities may seek to circumvent consent agreements entered into between the federal government and cities around the nation to enforce [federal law]." *Id.*

43. Fifth, the federal court "has retained jurisdiction to oversee the implementation of the Consent Decree[s]," making the implicated, consent-decree-based federal issues "significant to the federal system as a whole." *City of New Orleans*, 572 F. Supp. 3d at 276–77.

44. Sixth, the United States has recently reaffirmed that state laws cannot be used to intrude on federal interests, particularly in the environmental context.

   a. In the past month, the United States has sued four states—Michigan, Hawaii, Vermont, and New York—to protect its federal interests in enforcing environmental laws.

   b. In the actions against Michigan and Hawaii, the United States seeks to enjoin those states from proceeding with actions against fossil fuel companies to recover damages for climate change under state-law theories, including public nuisance. *United States v. Michigan*, No. 1:25-cv-00496 (W.D. Mich. filed Apr. 30, 2025), D.I. 1; *United States v. Hawaii*, No. 1:25-cv-00179 (D. Haw. filed Apr. 30, 2025), D.I. 1. In its complaints, the United States makes clear that "the federal government has demonstrated an active and continuous interest in reconciling protection of the environment" with the "promotion of economic growth." *Michigan*, No. 1:25-cv-00496, D.I. 1 ¶ 19; *Hawaii*, No. 1:25-cv-00179, D.I. 1 ¶ 19. The United States' complaints state: "This Nation's Constitution and laws do not tolerate this [state-

12

law] interference" with federal interests. *Michigan*, No. 1:25-cv-00496, D.I. 1 ¶ 4; *Hawaii*, No. 1:25-cv-00179, D.I. 1 ¶ 4.

    c.    In the actions against Vermont and New York, the United States seeks declarations invalidating state statutes that attempt to hold fossil fuel companies liable for their alleged contributions to climate change. *United States v. Vermont*, No. 2:25-cv-00463 (D. Vt. filed May 1, 2025), D.I. 1; *United States v. New York*, No. 1:25-cv-03656 (S.D.N.Y. filed May 1, 2025), D.I. 1. The complaints make clear that the United States' "sovereign interests include ensuring that State laws … do not interfere with federal law, including the Clean Air Act." *Vermont*, No. 2:25-cv-00463, D.I. 1 ¶ 10; *New York*, No. 1:25-cv-03656, D.I. 1 ¶ 10. Again, the complaints state: "This Nation's Constitution and laws do not tolerate this [state-law] interference" with federal interests. *Vermont*, No. 2:25-cv-00463, D.I. 1 ¶ 7; *New York*, No. 1:25-cv-03656, D.I. 1 ¶ 7.

45.    For each of these reasons, the federal issues necessarily raised by USVI's Complaint and actually disputed by the parties are substantial.

<u>Capable of Resolution in Federal Court Without Disrupting the Federal–State Balance</u>

46.    The substantial federal issues necessarily raised by USVI's Complaint and actually disputed by the parties are capable of resolution in this Court without disrupting the federal–state (or territorial) balance of power approved by Congress.

47.    This last condition has been described by the Supreme Court as the federal courts' "veto" power. *Grable*, 545 U.S. at 313. This criterion aims to "keep cases with substantial embedded federal issues out of the federal courts if allowing jurisdiction would swamp those courts." 13D Wright & Miller § 3562.

48. The federal–state balance would not be upset by this action proceeding in federal court because the "consent decrees, by definition, stem from a matter already within the court's jurisdiction." *Loveland*, 621 F.3d at 472. "[T]he district court's exercise of jurisdiction over this matter would not open the floodgates of litigation that might overwhelm the federal courts." *Id.*

49. By contrast, allowing this action to proceed in the Superior Court of the Virgin Islands would upset the federal–state balance because it would "undermine this Court's ability to oversee and enforce implementation" of the federal consent decrees. *City of New Orleans*, 572 F. Supp. 3d at 278.

50. USVI's Complaint therefore necessarily raises at least three substantial federal issues that are actually disputed by the parties and that are capable of resolution in this Court without upsetting the federal–state balance.

51. Because this Court has original jurisdiction over all three counts of the Complaint under *Gunn–Grable*, this action arises under federal law for purposes of 28 U.S.C. § 1331 and is removable under § 1441(a).

**B.    USVI's Complaint Collaterally Attacks Two Federal Court Orders**

52. All three counts of USVI's Complaint also collaterally attack the Anguilla and Bovoni Consent Decrees, which further warrants removal under §§ 1331 and 1441(a).

53. Under the "well-pleaded complaint rule," courts normally look only at the complaint itself in determining whether the action arises under federal law for purposes of § 1331. *United Jersey Banks v. Parell*, 783 F.2d 360, 365 (3d Cir. 1986); 13D Wright & Miller § 3566.

54. The "artful-pleading exception," however, is a corollary of the well-pleaded complaint rule that allows the Court to look to the gravamen of the complaint to ensure that a plaintiff cannot frustrate a defendant's right to remove by couching necessarily federal issues in state-law terms. *Parell*, 783 F.2d at 367; 14C Wright & Miller § 3722.1.

55. The artful-pleading exception applies here. Even though USVI's Complaint does not expressly challenge the federal consent decrees, it invokes and necessarily attacks them, as explained above.

56. USVI's Complaint also attempts to undermine the consent decrees in additional ways. For example, USVI's Complaint asserts, in effect, that recycling in the territory is impractical. *See, e.g.*, Compl. ¶ 31 ("Recycling in the Virgin Islands is particularly difficult and expensive."); *id.* ¶ 69 ("[Defendants] have routinely and consistently portrayed recycling as a practical solution …."); *id.* ¶ 73 ("As [Defendants] are aware, it is economically and practically impossible to recycle all of the plastic that they produce."); *id.* ¶¶ 89(c), 91(c) (alleging that certain Defendants "deceptively represent[] the economic viability of recycling single-use plastic"). But in the consent decrees, USVI agreed to implement waste diversion programs, including recycling programs for "plastics." Bovoni Consent Decree ¶¶ 32–33; Anguilla Consent Decree ¶ 36. USVI's claims in its Complaint thus undermine the obligations agreed to in the consent decrees.

57. Courts have upheld removal jurisdiction where a complaint attacks the terms of a federal consent decree, emphasizing that declining to recognize federal jurisdiction in this circumstance "could allow litigants to use the state courts as a vehicle to undermine a federal court's ability to police its consent decrees." *Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 546 (2d Cir. 2018) (upholding removal jurisdiction because the complaint's allegations raised whether a party had "complied with a consent decree approved by a federal district court"); *see also, e.g.*, *Baccus v. Parrish*, 45 F.3d 958, 960 (5th Cir. 1995) (holding that removal is "proper where a claim brought in state court seeks to attack or undermine an order of a federal district court"); *Donius v. Cnty. of San Diego*, No. 3:20-cv-01349-WQH-JLB, 2020 WL 13579362, at *5 (S.D. Cal. Sept. 18, 2020) (noting that the Ninth Circuit "has recognized that 'an action to obtain

15

relief from a federal judgment presents a general federal question, which may support removal to federal court'" (quoting *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 778 (9th Cir. 1994))).

58. Because all three counts of USVI's Complaint necessarily attack and attempt to undermine the federal consent decrees entered by a federal court in this District, removal is proper under §§ 1331 and 1441(a).

### C. Counts One and Two Also Fall Under This Court's Supplemental Jurisdiction

59. For the reasons detailed above, *supra* ¶¶ 20–58, Counts One and Two are within the original jurisdiction of this Court under § 1331 because, like Count Three, they rely on, are intertwined with, and collaterally attack the Anguilla and Bovoni Consent Decrees. *See* Compl. ¶¶ 33–34 & n.25, 88, 90.

60. Alternatively, if the Court were to conclude that only Count Three (public nuisance) arises under the laws of the United States, Counts One and Two are within the supplemental jurisdiction of this Court because they are so related to Count Three that they form part of the same case or controversy under Article III. *See* 28 U.S.C. § 1367(a).

61. The supplemental jurisdiction test is met if the state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see also New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1509 (3d Cir. 1996) ("We have consistently read § 1367(a) as codifying, (or in the area of pendant parties, expanding) the jurisdictional standard established in *Gibbs*."). Claims derive from a common nucleus of operative fact if the claims arise from the "same transaction or occurrence" as the "jurisdiction-invoking claim." 13D Wright & Miller § 3567.1 & n.23 (collecting cases).

62. Counts One and Two arise from the same transaction or occurrence as Count Three. All three counts seek to hold Defendants responsible for alleged environmental pollution based on their manufacture, distribution, and/or marketing of products packaged in "single-use plastic."

Compl. ¶¶ 89, 91, 95. All three counts allege that Defendants have deceptively represented the recyclability of single-use plastic. *Id.* And all three counts allege that Defendants' plastic packaging harms the environment and human health because it breaks down into microplastics. *Id.* ¶¶ 89, 91, 97. Indeed, the Complaint's three counts use nearly identical language. *E.g.*, *Id.* ¶ 89(e) (alleging that Defendants "deceptively represent[] the effectiveness of chemical recycling"); *id.* ¶ 91(e) (same); *id.* ¶ 95(e) (same except "deceptively" is substituted with "falsely").

63. Neither Count One nor Count Two raises a novel or complex issue of local Virgin Islands law or substantially predominates over Count Three. Also, there are no other compelling reasons for declining jurisdiction. This Court should therefore not decline to exercise supplemental jurisdiction over Counts One and Two.

64. Because Counts One and Two are within the jurisdiction of this Court, they are removable under § 1441(a).

\*    \*    \*

65. USVI has failed to comply with its obligations under the Anguilla and Bovoni Consent Decrees for years. The situation has become "dire," USVI says, Compl. ¶ 34, and so USVI now seeks to shirk its obligations under these consent decrees and pass them off to other parties.

66. USVI's claims must be heard in this Court. By expressly incorporating two federal consent decrees into its Complaint, including each count therein, USVI raises federal questions. And even if the Court were to conclude that only Count Three (public nuisance) arises under the laws of the United States, Counts One and Two would be within the supplemental jurisdiction of this Court.

67. Because this Court has original and supplemental jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367(a), this action may be removed under § 1441(a).

**PRESERVATION OF DEFENSES**

68. By removing this matter, PepsiCo and the other Defendants do not waive or forfeit any defense, including but not limited to lack of personal jurisdiction, insufficient process, insufficient service of process, or any other defense cognizable under the Federal Rules of Civil Procedure, the Local Rules of this Court, or under any law of any territory, state, or the United States.

69. By removing this matter, PepsiCo and the other Defendants do not admit any of the allegations in USVI's Complaint.

**CONCLUSION**

70. For the foregoing reasons, this case is properly removable under 28 U.S.C. §§ 1331, 1367, 1441, and 1446.

71. WHEREFORE, Defendants PepsiCo, Inc. and PepsiCo Caribbean, Inc.—with the consent of joined and served co-defendants The Coca-Cola Company and CC One Virgin Islands, LLC—respectfully remove this action from the Superior Court of the Virgin Islands (Case No. SX-2025-cv-00102) to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.

Dated: May 19, 2025

Respectfully submitted,

By: /s/ Andrew C. Simpson

Andrew C. Simpson, Esq.
V.I. Bar No.: 451
**Andrew C. Simpson, P.C.**
2191 Church St., Ste. 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel.: (340) 719-3900
asimpson@coralbrief.com

*Counsel for Defendants PepsiCo, Inc. and PepsiCo Caribbean, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I caused the foregoing Notice of Removal to be filed with the Clerk of the Court using the Court's CM/ECF system and served a copy of this filing by U.S. mail on the following entities and counsel of record in the removed action, who have not yet entered an appearance before this Court:

Jalicha Persad
Assistant Attorney General
Virgin Islands Department of Justice
Office of the Attorney General
6151 Estate La Reine
Kingshill, St. Croix, VI 00850

The Coca-Cola Company
The Corporation Trust Company
Corporation Trust Center 1209 Orange St
Wilmington, DE 19801

CC One Virgin Islands, LLC
DTF Agent for Service of Process Inc.
1000 Frederiksberg Gade, St. Thomas
U.S. Virgin Islands 00802

Dated: May 19, 2025                                  By: /s/ Andrew C. Simpson

                                                     Andrew C. Simpson