## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

COMMISSIONER OF THE DEPARTMENT OF
LICENSING AND CONSUMER AFFAIRS; and
GOVERNMENT OF THE UNITED STATES VIRGIN
ISLANDS,

                             Plaintiffs,

      v.

PEPSICO, INC.;
PEPSICO CARIBBEAN, INC.;
THE COCA-COLA COMPANY; and
CC ONE VIRGIN ISLANDS, LLC,

                          Defendants.

Civil Action No. 1:25-CV-00024

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

PREDICATE FOR DEFENDANTS' FLAWED REMOVAL ARGUMENT ................................. 3

LEGAL STANDARD .......................................................................................... 5

ARGUMENT ...................................................................................................... 6

   1.  Defendants' removal contravenes the well-settled rule that a federal defense cannot give rise to federal jurisdiction under the well-pleaded complaint rule ....................................... 6

   2.  The Complaint does not support the extension of federal jurisdiction under *Gunn-Grable* ............................................................................................... 9

      a.  Not necessarily raised ......................................................................... 9

      b.  Not actually disputed .......................................................................... 12

      c.  Not substantial ................................................................................. 14

      d.  Federal courts veto power factor ............................................................ 15

   3.  The Complaint does not "collaterally attack" the two Decrees ............................... 15

   4.  In any event, the Decrees do not limit the Government's ability to seek relief in its own Court ......................................................................................... 17

CONCLUSION ................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abadam v. Hawaii,*
  2000 WL 33122830 (9th Cir. 2000) ..................................................................... 10

*Batoff v. State Farm Ins. Co.,*
  977 F.2d 848 (3d Cir. 1992) ................................................................................ 5

*Carr v. Ala. Dep't of Hum. Res.,*
  1996 WL 795269 (M.D. Ala. July 30, 1996) ...................................................... 10

*Caterpillar Inc. v. Williams,*
  482 U.S. 386 (1987) ............................................................................... 6, 16, 18

*City of Hoboken v. Chevron Corp.,*
  45 F.4th 699 (3d Cir. 2022) ......................................................................... 7, 8, 16

*Dukes v. U.S. Healthcare, Inc.,*
  57 F.3d 350 (3d Cir. 1995) .................................................................................. 7

*Empire Healthchoice Assurance, Inc. v. McVeigh,*
  547 U.S. 677 (2006) ....................................................................................... 9, 14

*Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,*
  463 U.S. 1 (1983) ........................................................................................... 6, 9

*Gov't of United States Virgin Islands v. Takata Corp.,*
  2017 WL 3390594 (V.I. Super. Ct. June 19, 2017) ........................................ 10, 17

*Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.,*
  545 U.S. 308 (2005) ................................................................................. 9, 14, 15

*Gunn v. Minton,*
  568 U.S. 251 (2013) ........................................................................... 5, 9, 12, 14

*Gurlea v. Dudley,*
  2023 WL 2708988 (D.V.I. Mar. 30, 2023) .................................................. 9, 12, 14

*Hartel v. Beazer East, Inc.,*
  2025 WL 964007 (W.D. Pa. 2025) .................................................................. 11, 12

*Herrold v. Contigroup Cos.,*
  2005 WL 8158999 (W.D. Mo. July 26, 2005) ...................................................... 10

*Maglioli v. Alliance HC Holdings LLC,*
  16 F.4th 393 (3d Cir. 2021) ................................................................................ 7, 8

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.,*
  772 F.3d 158 (3d Cir. 2014) ................................................................................. 9

*Merrell Dow Pharm., Inc. v. Thompson,*
  478 U.S. 804 (1986) ............................................................................................. 6

*Metropolitan Life Ins. Co. v. Taylor,*
  481 U.S. 58 (1987) ............................................................................................... 6

*MHA LLC v. HealthFirst, Inc.,*
  629 Fed. App'x 409 (3d Cir. 2015) .............................................................. 12, 15

ii

*MHA, LLC v. UnitedHealth Grp. Inc.*,
  2014 WL 223176 (D.N.J. Jan. 21, 2014) ............................................................ 12
*Parrott v. Gov't of Virgin Islands*,
  230 F.3d 615 (3d Cir. 2000) ................................................................................ 5
*People ex rel. Leli v. Desimone*,
  1995 WL 642837 (N.D. Ill. Oct. 27, 1995) .......................................................... 10
*Pichardo v. Virgin Islands Com'r of Labor*,
  613 F.3d 87 (3d Cir. 2010) .................................................................................. 5
*Police Ass'n of New Orleans v. City of New Orleans*,
  572 F. Supp. 3d 265 (E.D. La. 2021) ................................................................ 10
*Rivet v. Regions Bank of Louisiana*,
  522 U.S. 470 (1998).......................................................................................... 6, 7
*Samuel-Bassett v. KIA Motors Am., Inc.*,
  357 F.3d 392 (3d Cir. 2004) ................................................................................ 6
*U.S. Express Lines Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002) ............................................................................ 6, 8
*United Jersey Banks v. Parell*,
  783 F.2d 360 (3d Cir. 1986) .......................................................................... 15, 16
*United States v. City of Loveland*,
  621 F.3d 465 (6th Cir. 2010) ............................................................................ 10
*United States v. Gov't of the Virgin Islands*,
  No. 3:10-cv-00048-RAM-RM (D.V.I. filed Nov. 22, 2010) ................................ 4

**Statutes**

12A V.I.C. § 101 .................................................................................. 2, 7, 10
12A V.I.C. § 304 .................................................................................. 2, 7, 10
28 U.S.C. § 1331 ................................................................................ 5, 7
28 U.S.C. § 1441(a) .......................................................................... 1, 5, 7
28 U.S.C. § 1447(c) ................................................................................ 6
48 U.S.C. § 1611 ..................................................................................... 5
48 U.S.C. § 1612 ..................................................................................... 5

**Other Authorities**

77 Fed. Reg. 18266 (Mar. 27, 2012) ...................................................... 4
78 Fed. Reg. 4438 (Jan. 22, 2013) ......................................................... 4

As this Court does not have original jurisdiction over this case under 28 U.S.C. § 1441(a), the Commissioner of the Department of Licensing and Consumer Affairs and the Government of the United States Virgin Islands (collectively, "the Government") respectfully moves this Court for an order remanding this case to the Superior Court of the Virgin Islands.

## INTRODUCTION

PepsiCo, Inc. ("PepsiCo") and the Coca-Cola Company ("Coca-Cola") have engaged in a decades-long disinformation campaign to convince the public to incorrectly believe that single-use plastic products are an environmentally responsible choice. Doc. 1-2 ("Complaint") at ¶ 1. Specifically, and without limitation, these Defendants have deceptively cast themselves as "sustainable" companies to increase comfort with single-use plastic products, *see* Complaint at ¶¶ 55–64, have falsely pushed recycling and recyclability as the solution to reassure the public about single-use plastic products, *see* Complaint at ¶¶ 65–77, have misled the public about their use of recycled plastic, *see* Complaint at ¶¶ 78–84, and have failed to disclose the presence and danger of microplastics from their products, *see* Complaint at ¶¶ 85–87. Now, just as these Defendants have known would inevitably occur, the U.S. Virgin Islands (and more broadly, the world) is being forced to live with the results of these Defendants' disinformation campaign: a monumental threat to the environment and human health from the proliferation of plastic waste and microplastics. *See* Complaint at ¶¶ 22–54.

Accordingly, on April 11, 2025, the Government filed a Complaint in the Superior Court of the Virgin Islands, Division of St. Croix, alleging that: (1) Defendants PepsiCo, PepsiCo Caribbean Inc. ("PepsiCo Caribbean"), Coca-Cola, and CC One Virgin Islands, LLC ("CC One") (collectively, "Defendants"), created a public nuisance in violation of U.S. Virgin Islands law through their production, sale, distribution, and misleading promotion of single-use plastic

products and their recyclability, *see* Complaint at ¶¶ 92–102; (2) Defendants PepsiCo and Coca-Cola engaged in unfair and deceptive business practices in violation of 12A V.I.C. § 304 by, among other things, misrepresenting the utility of recycling single-use plastics and the ability of recycling to offset the environmental risks associated with single-use plastics, *see* Complaint at ¶¶ 90–91; and (3) Defendants PepsiCo and Coca-Cola made untrue or misleading statements in violation of 12A V.I.C. § 101 concerning their own plastic and plastic recycling, including deceptively representing their use of recycled plastic in their single-use plastic packaging, *see* Complaint at ¶¶ 88–89.

On May 19, 2025, the PepsiCo Defendants filed a Notice of Removal (Doc. 1) removing this case from the Superior Court under 28 U.S.C. § 1441(a), alleging that this Court has original jurisdiction over the action because it arises under the laws of the United States. Defendants Coca-Cola and CC One consented to the removal on May 19, 2025. *See* Doc. 1-8 (Coca-Cola's Consent to Removal); Doc. 1-9 (CC One's Consent to Removal). To substantiate their federal question removal, Defendants make two primary arguments founded on the existence of two tangential federal consent decrees between the Government and the United States in an unrelated matter. *First*, Defendants contend that the Government's Complaint raises federal issues under the *Gunn-Grable* extension of federal question jurisdiction. But none of the claims in the Complaint "necessarily raise" an "actually disputed" and "substantial" federal issue. *Second*, Defendants argue that the Court should use the artful pleading doctrine to read beyond the Complaint to find a federal issue that is plainly not raised by the Government's allegations here. This theory stretches the artful pleading exception into inappropriate territory, since the Government, as the master of its Complaint, has purposefully pleaded territorial law violations because of Defendants' alleged violations of territorial law. *Lastly*, as an alternative argument, Defendants assert that this Court

should exercise supplemental jurisdiction over those claims that do not present a federal question. However, since none of the allegations raise a federal question, supplemental jurisdiction cannot be supported here.

Accordingly, this Court should remand this action back to the Superior Court and permit the Government's claims – all of which are predicated on violations of territorial law – to be tried in its own forum.

## PREDICATE FOR DEFENDANTS' FLAWED REMOVAL ARGUMENT

The flawed predicate for Defendants' removal are two consent decrees between the Government and the United States pertaining to the Anguilla and Bovoni landfills in the U.S. Virgin Islands. The Anguilla and Bovoni landfills have been open and operational since 1966 and 1979, respectively. Doc. 1-14 at ¶¶ 68, 55. These are the only two landfills available for the residential, commercial, industrial, and municipal waste generated by the U.S. Virgin Islands. *See* Complaint at ¶ 32.

In 2000 and 2001, the United States Environmental Protection Agency ("EPA") entered two administrative orders on consent ("AOCs")[1] finding that certain waste management practices at the Anguilla and Bovoni facilities presented risks to human health and the environment. Doc. 1-14 at ¶¶ 80–83, 92–94. The AOCs, *inter alia*, prescribed certain reforms to improve waste management practices at the two facilities and ameliorate these risks. *Id.* at ¶¶ 85, 97. Later, in 2006, the EPA issued two compliance orders[2] finding violations of two sets of regulations under the Clean Air Act, the Municipal Solid Waste Landfills Maximum Achievable Control Technology

---

[1] EPA Docket No. RCRA-02-2000-7302 (Bovoni AOC); EPA Docket No. RCRA-02-2001-7302 (Anguilla AOC).
[2] *See* EPA Docket No. CAA-02-2006-1003 ("Anguilla Air CO"); EPA Docket No. CAA-02-2006-1002 ("Bovoni Air CO").

("Landfill MACT"),[3] and the Federal Plan Requirements for Municipal Solid Waste Landfills that Commenced Construction Prior to May 30, 1991 and Have Not Been Modified or Reconstructed Since May 30, 1991 ("Federal Plan"),[4] at the Anguilla and Bovoni facilities. *See id.* at ¶¶ 65, 78. Lastly, in 2008, the EPA issued an AOC[5] mandating reforms on two incidental scrap tire disposal areas bordering the Bovoni facility. *Id.* at ¶¶ 108–13.

In 2010, on behalf of the EPA, the United States filed a civil action in the District Court of the Virgin Islands, Division of St. Thomas and St. John, alleging violations of the Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*, and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973(b), at Anguilla and Bovoni. *United States v. Gov't of the Virgin Islands*, No. 3:10-cv-00048-RAM-RM (D.V.I. filed Nov. 22, 2010); *see* Doc. 1-14 at ¶ 1. The first set of claims centered on the aforementioned violations of the Landfill MACT, and the second set of claims focused on noncompliance with the three identified AOCs. *Id.* at ¶¶ 1, 121–80; *see also* 77 Fed. Reg. 18266, 18266 (Mar. 27, 2012); 78 Fed. Reg. 4438, 4438 (Jan. 22, 2013).

To settle the lawsuit, the United States and the Government of the Virgin Islands entered into two consent decrees concerning the Anguilla and Bovoni landfills (collectively, the "Decrees"). The Decrees, *see* Doc. 1-10 (Anguilla Landfill Consent Decree) & Doc. 1-11 (Bovoni Landfill Consent Decree), were entered and approved by the United States District Court for the District of the United States Virgin Islands, St. Thomas/St. John Division in 2012 and 2013. *See U.S. v. Gov't of the U.S. Virgin Islands*, No. 3:10-cv-00048 (2012) (Bovoni); *U.S. v. Gov't of the U.S. Virgin Islands*, No. 3:10-cv-00048 (2013) (Anguilla). As settlement orders, they required, among other things, that the Government pay a penalty, that the Virgin Islands Waste Management

---

[3] Codified at 40 C.F.R. Part 63, Subpart AAAA, §§ 63.1930-1990.
[4] Codified at 40 C.F.R. Part 62, Subpart GGG, 40 C.F.R. §§ 62.14350-62.14356.
[5] *See* EPA Docket No. RCRA-02-2008-7307 (Scrap Tire AOC).

Authority adhere to new reporting standards to demonstrate compliance with the Clean Air Act at the two landfills, and that the Government commit to monitoring, testing, operating, and maintaining a new gas collection and control system design plan.  *See* Doc. 1-10 & Doc. 1-11.

Notably, Defendants are not parties to these Decrees.  Moreover, the Government in this action is not seeking enforcement of these Decrees, interpretation of these Decrees, or modification of these Decrees.  Simply put, the Government's conduct with respect to these Decrees is not at issue in this case; rather, it is Defendants' *own misconduct* that is at issue, and Defendants' own misconduct does not depend upon these Decrees.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction,"[6] and therefore, may not hear a claim unless specifically "authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)).  Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,

---

[6] While the District Court of the Virgin Islands is an Article IV court, as opposed to an Article III court, this Court holds the same limited subject-matter jurisdiction as any Article III court.  *See* 48 U.S.C. §§ 1611–12; *see generally Pichardo v. Virgin Islands Com'r of Labor*, 613 F.3d 87, 93–98 (3d Cir. 2010); *Parrott v. Gov't of Virgin Islands*, 230 F.3d 615, 619 (3d Cir. 2000).

the case shall be remanded." 28 U.S.C. § 1447(c). "The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[T]he federal law 'must be in the forefront of the case and not collateral, peripheral, or remote.'" *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (quoting *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 n.11 (1986)). "To bring a case within the [federal question removal] statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998) (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). "Thus, a case may not be removed to federal court on the basis of a federal defense." *Id.* (citing *Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 14 (1983)); *see also U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) ("It is not enough that a federal question is or may be raised as a defense.").

**ARGUMENT**

**1.  Defendants' removal contravenes the well-settled rule that a federal defense cannot give rise to federal jurisdiction under the well-pleaded complaint rule**

Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. Indeed, it is well-established that "[a] federal defense 'ordinarily does not appear on the face of the well-pleaded complaint, and, therefore, usually is insufficient to warrant removal

6

to federal court.'" *Maglioli v. Alliance HC Holdings LLC*, 16 F.4th 393, 406 (3d Cir. 2021) (quoting *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995)); *see also City of Hoboken v. Chevron Corp.,* 45 F.4th 699, 708 (3d Cir. 2022) ("The rule [is] that a federal defense, like ordinary preemption, does not justify removal.") (internal quotation marks omitted).  As explained by the Supreme Court:

> A defense is not part of a plaintiff's properly pleaded statement of his or her claim. To bring a case within the federal-question removal statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.  Thus, a case may not be removed to federal court on the basis of a federal defense, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

*Rivet*, 522 U.S. at 475 (internal citations and punctuation omitted).

In contending that removal is proper under § 1441(a), Defendants assert that "this Court has original jurisdiction over this action, which arises under the laws of the United States, pursuant to 28 U.S.C. § 1331."  Doc. 1 at 1.  However, the claims alleged in the Government's Complaint arise *solely* under the laws of the Virgin Islands – specifically, the Consumer Protection Law of 1973, 12A V.I.C. §§ 101 *et seq.*; the Consumer Fraud and Deceptive Business Practices Act, 12A V.I.C. §§ 304 *et seq.*; and the U.S. Virgin Islands common law of public nuisance.  *See* Complaint at ¶¶ 88–102.  In an effort to circumvent the Complaint's indisputable grounding in U.S. Virgin Islands law, Defendants argue that federal question jurisdiction is nonetheless conferred by the Complaint's ancillary and limited mention of the two federal consent decrees.  *See id*. at ¶¶ 32–34, 98 & n.35–36.

In so contending, Defendants make the unilateral assertion that the Government's claims against Defendants "seek[] to shirk its obligations under these consent decrees and pass them off to other parties."  Doc. 1 at ¶ 65.  Essentially, Defendants make the remarkable assertion that they

are insulated from being held responsible for *their own* violations of U.S. Virgin Islands law (through their misleading and false advertising, their deceptive business practices, and their contribution to an unreasonable public nuisance) because the Decrees impose on the Government certain other responsibilities related to the Anguilla and Bovoni landfills.  *See* Doc. 1 at ¶¶ 29, 56.  Those responsibilities, however, are not at issue here and are not raised on the face of the Complaint.  Indeed, Defendants' Notice of Removal cites no authority supporting the proposition that Defendants can escape liability for *their own wrongs* because of tangentially-related federal consent decrees that does not implicate them or their own wrongs.  At best, Defendants' argument amounts to a (likely unsuccessful) federal defense pertaining to only a portion of the Government's public nuisance claim, which, as a matter of law, cannot support federal question jurisdiction.  *See, e.g., Maglioli,* 16 F.4th at 406 (a federal defense "is insufficient to warrant removal to federal court,"); *City of Hoboken,* 45 F.4th at 708 (existence of a federal defense "does not justify removal"); *Higgins*, 281 F.3d at 389 (3d Cir. 2002) (a federal question "must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.").

The allegations in the Government's well-pleaded Complaint are devoid of anything resembling language which would implicate a federal question.  While the Decrees were tangentially mentioned in the Complaint as illustrative of the threatening and ongoing nature of single-use plastic pollution in the U.S. Virgin Islands, the Decrees do not play *any* part in pleading the Government's claims against Defendants; nor will the Government need or choose to rely on the Decrees for resolution of its claims.  Because the Decrees do not form the bases for the Government's claims and are not relied upon in the Complaint so as to raise a federal question, the Decrees are an insufficient basis for removal to this Court.

**2. The Complaint does not support the extension of federal jurisdiction under *Gunn-Grable***

In *Gunn*, the Supreme Court recognized a "special and small category" of cases in which federal jurisdiction over a state law claim is appropriate because there exists "a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313–14 (2005)). This doctrine allows extension of federal question jurisdiction to those claims where "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* A removing defendant must show that all four elements are met. *See id.* As detailed below, the claims at issue here, however, do not meet this threshold. Therefore, extension of federal question jurisdiction through application of the *Gunn-Grable* rule – a "slim category" of cases, *see McVeigh*, 547 U.S. at 701– is inappropriate, and this Court lacks jurisdiction to hear the case.

**a. Not necessarily raised**

A federal issue is necessarily raised where "the underlying federal law issue is an element of the plaintiff's cause of action." *Gurlea v. Dudley*, 2023 WL 2708988 at *4 (D.V.I. Mar. 30, 2023) (citing *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014)). In other words, "the success of the state law claim must be dependent on the 'validity,' 'effect,' 'construction[,] or application' of the underlying federal law." *Id.* at *4 (citing *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 9 (1983)).

Here, none of the Government's claims, as pleaded, necessitate construction or interpretation of the Decrees.[7]  The allegations here, that Defendants false advertising and deceptive marketing have contributed to a plastic waste crisis, do not require the interpretation, modification, or application of the Decrees.  The Decrees do not underlie the territorial law claims at issue here.  Specifically, whether or not Defendants have violated the U.S. Virgin Islands' consumer protection and unfair competition laws will not turn on the Decrees; nor will those Decrees be relevant or necessary to prove the elements of these claims.  *See Gov't of United States Virgin Islands v. Takata Corp.*, 2017 WL 3390594 at *28–40 (V.I. Super. Ct. June 19, 2017) (delineating elements of proving violations of the Consumer Protection Law and the Consumer Fraud and Deceptive Business Practices Act); 12A V.I.C. §§ 101 *et seq.*; 12A V.I.C. §§ 304 *et seq.* Defendants do not argue otherwise in their Notice of Removal.  *See* Doc. 1 at ¶¶ 27–35.

---

[7] Notably, none of the authority cited by Defendants supports the proposition that the Decrees are "necessarily raised" and "actually disputed" by the Government's claims here.  Indeed, in each of the cases cited by Defendants, a *party* to the consent decree is sued for an action it undertook pursuant to a consent decree's directions or for an action that is directly governed by the consent decree's terms.  The party raises the terms of the decree as an explanation, seeking that the court *enforce* the decree's *terms*.  *See Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265 (E.D. La. 2021) (the City, a party to the consent decree, sought the court's enforcement of other party's compliance with order issued pursuant to consent decree); *Herrold v. Contigroup Cos.*, 2005 WL 8158999 at *2 (W.D. Mo. July 26, 2005) (plaintiff class sued defendant company for defendants' conduct that was regulated by a consent decree directly governing party-defendants); *Carr v. Ala. Dep't of Hum. Res.*, 1996 WL 795269 at *4 (M.D. Ala. July 30, 1996) (plaintiff sued defendant DHR for an action it took in compliance with governing federal consent decree); *Abadam v. Hawaii*, 2000 WL 33122830 at *2 (9th Cir. 2000) (plaintiffs alleged defendants violated their contractual obligation under the terms and conditions of a federal consent decree); *People ex rel. Leli v. Desimone*, 1995 WL 642837 at *3 (N.D. Ill. Oct. 27, 1995) (plaintiff requested that the court overturn result produced by compliance with consent decree); *United States v. City of Loveland*, 621 F.3d 465 (6th Cir. 2010) (appellant City sought cancellation of contract mandated by federal consent decree).  Accordingly, since Defendants are not and have never been parties to the Decrees, and since the Government is not seeking relief for actions taken pursuant to the Decrees, these cases do not support that the Decrees are necessarily raised and actually disputed by the Government's claims.

To show that the Government's public nuisance claim warrants jurisdiction under *Gunn-Grable*, Defendants instead hang their hat on conclusory liability shifting arguments, seeking to erase the consequences of their own misconduct alleged in the Complaint by recasting them as "an attempt to pass off [the Government's] federal consent-decree responsibilities." *Id.* at ¶ 28 (erroneously arguing that the Complaint calls into question the Court's ability to enforce or modify the Decrees), ¶ 30 (erroneously arguing that the abatement order sought by the government "is inseparable from its obligations" under the Decrees), ¶ 32 (erroneously arguing that "USVI will be unable to [prove that Defendants caused a public nuisance] because the asserted harm is not caused by Defendants at all"). Still, none of these amount to a showing that the Decrees are necessarily raised by the Government's public nuisance claim under *Gunn-Grable* because the Government's claim – that Defendants have contributed to the creation of a public nuisance through their intentional deceptive marketing of single-use plastics – does not require interpretation or modification of the Decrees. Rather, at best, these arguments show that Defendants consider the Decrees as a factor to be considered in determining their own liability – which characterizes the relevancy of the Decrees as conjectural or incidental. Plainly, whether a court would acknowledge the existence of the Decrees does not make them necessary to the Government's claims.

Recently, another Third Circuit district court rejected a similar argument in the context of remanding a toxic chemical exposure claim. *See Hartel v. Beazer East, Inc.*, 2025 WL 964007 at *1 (W.D. Pa. 2025). In their notice of removal, the defendants in *Hartel* "assert[ed] that certain allegations in the Complaint f[e]ll within the period of time during which a Consent Decree involving the [polluting] Facility was in place, so some claims w[ould] require that a federal statute and regulations be interpreted to determine whether [d]efendants were in violation of that

agreement." *Id.* at *4. There, like here, the consent decree was entered "as a result" of "a lawsuit brought by the United States on behalf of the EPA and the PA DEP," and the defendants alleged that the existence of the decree necessarily raised a federal issue. *Id.* at *4 n.7, 8–9. The court disagreed, noting specifically that the defendants "d[id] not explain why Plaintiffs would have to show that the Consent Decree was violated in order to prove any of their claims," and that "while Defendants may choose to offer evidence" relevant to the consent decree "as a defense to certain claims in this matter, such a defense is not sufficient to invoke this Court's federal jurisdiction over Plaintiffs' state law claims." *Id.* at *9. The same is true here. While Defendants may raise the Decrees for consideration at a later point in the Superior Court, the Decrees are not necessarily raised by the Complaint within the meaning of conferring *Gunn-Grable* jurisdiction. Accordingly, remand is warranted.

If the Court determines that the Complaint does not necessarily raise a federal issue (as it should), it need not consider the remaining three elements of the inquiry. *See MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x 409, 412–13 (3d Cir. 2015) (noting that to fall within the *Gunn-Grable* extension, "the plaintiff's state law claim must 'necessarily raise a stated federal issue,'"); *Gunn*, 568 U.S. at 258 ("Where all four of these requirements are met . . . jurisdiction is proper."). That said, the Government will briefly address each of the remaining elements.

### b.  Not actually disputed

A federal law issue that is necessarily raised is actually disputed if it is "central and dispositive in the case as opposed to being merely 'incidental,' 'possible,' or 'conjectural.'" *Gurlea*, 2023 WL 2708988 at *4 (citing *MHA, LLC v. UnitedHealth Grp. Inc.*, 2014 WL 223176 at *7 (D.N.J. Jan. 21, 2014)). Here, the Decrees are not central to or dispositive of the Government's claims. The Government's relationship to the Decrees is separate from merits of

the Government's claims against Defendants.  The Decrees are not dispositive here because their terms and existence will not impact the determination of whether Defendants violated U.S. Virgin Islands law, and any interpretation or construction of the Decrees would not and could not single-handedly dispose of the lawsuit.

The Decrees are not actually disputed by the Government's claims, both because an interpretation or modification of the Decrees is not central to the disposition of the Government's claims *and* because an interpretation or modification of the Decrees is not contemplated by the Government's claims.  The Complaint alleges that, "[a]s PepsiCo and Coca-Cola are aware, it is economically and practically impossible to recycle all of the plastic that they produce," Complaint at ¶ 73, especially considering the inevitable deconstruction of Defendants' single-use plastics into microplastics "that are readily transported by air, wind, water, and . . . are currently almost impossible to eradicate in the environment." *Id.* at ¶ 37.  Even if the Decrees had *any* bearing on the Government's claims, they are certainly not central and dispositive where the allegations in the Complaint are far more expansive than that portion of Defendants' conduct that causes plastics to end up in the Anguilla and Bovoni landfills.  Whether Defendants intentionally deceptively advertised and, in doing so, violated consumer protection and consumer fraud laws does not at all call the Decrees into dispute.  Indeed, even the Government's public nuisance claim is not limited solely to the effects of Defendants' misrepresentations on Anguilla and Bovoni.  *See* Complaint at ¶¶ 92–102 (alleging microplastic pollution, waterway plastic pollution, and plastic litter as contributing to a public nuisance in addition to the waste management crisis).  For these reasons, the Decrees are not actually disputed within the meaning of conferring federal question jurisdiction under *Gunn-Grable*.

### c.  Not substantial

A federal law issue that is necessarily raised and actually disputed is substantial if it "significantly impact[s] the 'federal system as a whole.'"  *Gurlea*, 2023 WL 2708988 at *4 (quoting *Gunn*, 568 U.S. at 260)).  "The fact that a 'federal issue is significant to the particular parties in the immediate suit' is insufficient," to render an otherwise necessarily raised and actually disputed federal issue "substantial."  *Id.*  Courts consider (1) whether the issue is "one of pure law that will have a dispositive effect on the case as opposed to being 'fact-bound and situation specific,'" (2) whether the court's resolution of the issue will "be controlling in numerous other cases," and (3) if "the Government . . . has a direct interest in the availability of a federal forum to vindicate its own administrative action."  *Id.* (relying on *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700–01; *Gunn*, 568 U.S. at 262; *Grable*, 545 U.S. at 315).

While Defendants do not address these factors in their Notice of Removal, Defendants could not in any event succeed in showing any of these points.  First, any interpretation or construction of the Decrees would be intrinsically fact-bound and situation specific.  An interpretation as to the reach of the Decrees in terms of offsetting Defendants' liability would be situation specific, especially considering that the Decrees only touch the two landfills and that the Government's public nuisance claim is not similarly limited.  *See* Complaint at ¶¶ 92–102 (outlining the reach of the Government's public nuisance claim).  Second, the Court's resolution of the federal issue will have no effect on any other cases.  The Decrees are situation-specific and factually anchored; to the Government's knowledge, there are currently no pending actions seeking to enforce, modify, or expand upon the Decrees.  Finally, the third factor – concerning the federal government's access to a federal forum – is plainly not at issue here.  The Decrees therefore do not

14

present a substantial federal issue within the meaning of the *Gunn-Grable* framework.  Again, remand is warranted.

### d.  Federal courts veto power factor

Even if the Decrees here *were* to meet the threshold for the necessarily raised, actually disputed, and substantiality requirements, "the exercise of federal jurisdiction is [still] subject to a possible veto." *Grable*, 545 U.S. at 313.  An exercise of this veto power is warranted where "taking jurisdiction over cases such as this one would disturb the 'congressionally approved balance of federal and state judicial responsibilities.'" *MHA LLC*, 629 Fed. App'x at 415 n.8.  This is a quintessential example of a case in which the Court should exercise its veto power.  Here, the claims in this case arise entirely under U.S. Virgin Islands law, are brought by the Government of the U.S. Virgin Islands, and seek relief tailored to the circumstances in the U.S. Virgin Islands.  The Decrees do not change these facts.  The mere fact that the Decrees, which do not form the basis for the Government's claims, touch two U.S. Virgin Islands landfills is insufficient to turn an otherwise entirely territory-specific case into a federal one.  *See Grable*, 545 U.S. at 313–14 (federal jurisdiction must still be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331.").

Accordingly, since Defendants cannot make this threshold showing, this Court cannot exercise federal question jurisdiction pursuant to the *Gunn-Grable* extension.

### 3.  The Complaint does not "collaterally attack" the two Decrees

Under the artful pleading doctrine, "a court will not allow a plaintiff to deny a defendant a federal forum when the plaintiff's complaint contains a federal claim 'artfully pled' as a state law claim." *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986).  However, federal courts "almost always credit" if "plaintiffs say their claims are state-law claims." *City of Hoboken*, 45

F.4th at 707. As "the master[s] of the[ir] claim[s]," plaintiffs may properly "avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392; *see also Parell*, 783 F.2d at 368 ("An expansive application of the [artful pleading] doctrine could effectively abrogate the rule that a plaintiff is master of his or her complaint."). "After all, they choose to sue, so they choose why." *City of Hoboken*, 45 F.4th at 707. The Government here has done that in grounding its claims in U.S. Virgin Islands law.

Defendants' Notice of Removal argues that this Court should use the artful pleading exception to read into the Government's Complaint an "attempt[] to undermine the federal consent decrees." Doc. 1 at ¶ 58. But here "there are no federal claims to disguise," meaning that "[t]he causes of action are about state torts" and are not designed to "disguise[] federal claims as state ones." *City of Hoboken*, 45 F.4th at 713. Indeed, the artful pleading doctrine "cannot be invoked" where a party "attempts to justify removal on the basis of facts not alleged in the complaint." *Caterpillar*, 283 U.S. at 397. If the Complaint had alleged facts solely or primarily related to the Anguilla and Bovoni landfills, and chiefly relied on those facts in its claims, Defendants could have argued that the artful pleading doctrine is appropriate here. But that is not what occurred here. Defendants' conduct alleged in the Complaint is far greater than just that which relates to these two landfills expressly because the Government specifically pleaded facts relating to and supporting the territory-specific laws that Defendants have violated. *See* Complaint at ¶¶ 92–102 (setting forth Defendants' conduct that creates a public nuisance).

Indeed, despite broadly asserting that "all three counts of USVI's Complaint necessarily attack and attempt to undermine" the Decrees, Defendants fail to elucidate what federal claims are disguised by artful pleading. Doc. 1 at ¶ 58. Each of the counts alleged in the Complaint are directly tethered to U.S. Virgin Islands statutory and common law by delineated facts. The

Government seeks to use its own forum in resolving its claims in pursuit of relief that is specific to the U.S. Virgin Islands.  Aside from generally reiterating that the Government seeks "to undermine the consent decrees" with its claims under the Consumer Protection Law, the Consumer Fraud and Unfair Business Practices Act, and public nuisance common law, Defendants have not shown, nor could they show, that the artful pleading doctrine may be properly used here to bring the Government's territory-law claims into federal court.

### 4. In any event, the Decrees do not limit the Government's ability to seek relief in its own Court

It is true that the Decrees vest the federal district court with continuing authority to "resolv[e] disputes arising under this Decree or enter[] orders modifying this Decree . . . or effectuat[e] or enforc[e] compliance," with the Decrees.  Doc. 1-10 at ¶ 99; Doc. 1-11 at ¶ 95. However, by their terms, each of the Decrees "does not limit or affect the rights of Defendants [U.S. Virgin Islands] or of the United States against any person who is not a party to this Consent Decree."  Doc. 1-10 at ¶ 91; Doc. 1-11 at ¶ 87.  In fact, the Decrees specifically note that they are "not a permit, or a modification of any permit, under any federal, territorial, or local laws or regulations," and that they "shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree."  Doc. 1-10 at ¶¶ 90, 92; Doc 1-11 at ¶¶ 86, 88.

The terms of the Decrees make clear that they are contextually specific to the dispute between the United States and the Government.  *See generally* Doc. 1-10; Doc. 1-11.  Similarly, the terms of the Decrees make clear that they cannot be used to abridge the rights of the Government against third parties, including the right to be heard in its chosen forum. *See generally* Doc. 1-10; Doc. 1-11; *see also Takata Corp.*, 2017 WL 3390594 at *17 (noting that "the Virgin Islands has a significant interest in redressing harms committed against its citizens by out-of-state

17

companies" in attributing deference to the Government's choice of forum). Lastly, the terms of the Decrees make clear that they do not offer any new legal rights to third parties, including the right to, "merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399.

While the Decrees do allow the federal district court continuing jurisdiction over disputes arising under the Decrees, the allegations in the Complaint simply do not constitute one such dispute "arising under" the Decrees. As discussed above, the Government's allegations against Defendants arise under U.S. Virgin Islands law and, as pleaded, do not require the interpretation, modification, or construction of the Decrees. Whether or not the existence of the Decrees will be mentioned in the litigation, this action is plainly not the sort meant to be caught by the continuing jurisdiction provision. Accordingly, this provision does not offer a basis on which to find federal question jurisdiction, and the case should be remanded.

## CONCLUSION

For the reasons stated herein, the Government respectfully requests that this Court issue an order granting the Government's Motion to Remand and permit the Government's claims to be resolved in the Superior Court.

[Signature on the following page]

Dated: June 18, 2025                    RESPECTFULLY SUBMITTED,

/s/ *Jalicha Persad*
**JALICHA PERSAD**
**ASSISTANT ATTORNEY GENERAL**
VIRGIN ISLANDS DEPARTMENT OF JUSTICE
Office of the Attorney General
3438 Kronprindsens Gade
GERS Building, 2nd Floor
St. Thomas, USVI 00802-5749

18

T: (340) 774-5666 Ext. 10121

*Attorney for Plaintiffs Commissioner of the*
*Department of Licensing and Consumer Affairs and*
*Government of the United States Virgin Islands*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Claire Lockerby Chapla
Weil, Gotshal & Manges LLP
2001 M Street NW
Suite 600
Washington, DC 20036
202-682-7234
Claire.chapla@weil.com
Attorney for PepsiCo Caribbean, Inc. and Pepsico, Inc.

Christopher Allen Kroblin
Kellerhals Ferguson Kroblin PLLC
Royal Palms Professional Building
9053 Estate Thomas, Suite 101
St. Thomas, VI 00802-3602
340-779-2564
888-316-9269 (fax)
ckrobin@kellfer.com
Attorney for CC One Virgin Islands, LLC

Chad C. Messier
Dudley Newman Feurezeig LLP
100 Frederiksberg Gade
St. Thomas, VI 00802
340-774-4422
cmessier@dnfvi.com
Attorney for The Coca-Cola Company

Arianna M. Scavetti
Weil, Gotshal & Manges
2001 M Street NW
Suite 600
Washington, DC
202-682-7291
Arianna.scavetti@weil.com
Attorney for PepsiCo Caribbean, Inc. & Pepsico, Inc.

Andrew C. Simpson
Andrew C. Simpson, P.C.
2191 Church Street Suite 5
Christiansted
St. Croix, VI 00820-5087
340-719-3900
asimpson@coralbrief.com
Attorney for PepsiCo Caribbean, Inc. and Pepsico, Inc.

Andrew S. Tulumello
Weil, Gotshal & Manges
2001 M Street, NW
Suite 600
Washington, DC 20036-5306
202-682-7000
Drew.tulumello@weil.com
Attorney for PepsiCo Caribbean, Inc. and Pepsico, Inc.

By: */s/ Jalicha Persad*
Jalicha Persad, Esq.