**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

COMMISSIONER OF THE DEPARTMENT OF
LICENSING AND CONSUMER AFFAIRS; and
GOVERNMENT OF THE UNITED STATES
VIRGIN ISLANDS,

               Plaintiffs,

 v.

PEPSICO, INC.;
PEPSICO CARIBBEAN, INC.;
THE COCA-COLA COMPANY; and
CC ONE VIRGIN ISLANDS, LLC,

               Defendants.

Case No. 1:25-cv-00024

**DEFENDANTS PEPSICO, INC. AND PEPSICO CARIBBEAN, INC.'S**
**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

LEGAL STANDARD.................................................................................................. 4

ARGUMENT .............................................................................................................. 5

I.  Plaintiffs' Claims Seeking to Hold Defendants Responsible for a "Waste Management Crisis" and Incorporating Two Federal Consent Decrees Governing the Territory's Only Two Landfills Necessarily Raise Substantial, Disputed Federal Issues .................................................................................................... 6

    A.  Plaintiffs' claims necessarily raise federal issues because their purported compliance with the consent decrees is an element of each cause of action .......... 6

        1.  A court cannot adjudicate Plaintiffs' claims without interpreting and potentially modifying the consent decrees........................................... 6

        2.  Plaintiffs' contrary arguments are unavailing........................................... 11

    B.  The federal issues are actually disputed and central to the action because they relate to the U.S. Virgin Islands' only two landfills ..................................... 13

    C.  The federal issues are substantial to the federal system as a whole because Plaintiffs' claims implicate federal interests......................................................... 14

    D.  The federal issues are capable of resolution in this Court without disrupting the federal–state (or territorial) balance of power because the decrees stem from a matter already within this Court's jurisdiction ................... 16

II.  Plaintiffs' Complaint Also Attempts to Circumvent Two Federal Court Orders by Delegating Plaintiffs' Obligations to Defendants ............................................................. 17

III.  The Text of the Consent Decrees Does Not (and Cannot) Prohibit Removal Because Defendants Were Not Party to the Litigation that Produced the Decrees .......... 19

CONCLUSION............................................................................................................ 20

REQUEST FOR ORAL ARGUMENT ...................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baccus v. Parrish*,
  45 F.3d 958 (5th Cir. 1995) ...................................................................................18

*Bartlett v. Honeywell Int'l, Inc.*,
  737 F. App'x 543 (2d Cir. 2018) ..............................................................2, 18, 19

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*,
  29 F. Supp. 3d 808 (E.D. La. 2014) .......................................................................12

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ........................................................................................8, 16

*In re Briscoe*,
  448 F.3d 201 (3d Cir. 2006) ............................................................................4, 19

*Brusewski v. United States*,
  181 F.2d 419 (3d Cir. 1950) ...........................................................................19, 20

*Carr v. Ala. Dep't of Hum. Res.*,
  No. 96–D–1153–N, 1996 WL 795269 (M.D. Ala. July 30, 1996) .........................11

*Centennial Plaza Prop, LLC v. Trane U.S., Inc.*,
  No. 22-2644, 2024 WL 1254184 (3d Cir. Mar. 25, 2024).......................................5

*Deakins v. Monaghan*,
  484 U.S. 193 (1988) ...............................................................................................5

*Donius v. Cnty. of San Diego*,
  No. 3:20-cv-01349-WQH-JLB, 2020 WL 13579362 (S.D. Cal. Sept. 18, 2020)....................18

*E.E.O.C. v. Waffle House, Inc.*,
  534 U.S. 279 (2002)..............................................................................................19

*Erie Ins. Exch. v. V.I. Enters., Inc.*,
  264 F. Supp. 2d 261 (D.V.I. 2003) ........................................................................15

*Eyak Native Vill. v. Exxon Corp.*,
  25 F.3d 773 (9th Cir. 1994) ..................................................................................18

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981).................................................................................................6

*Gardiner v. St. Croix Dist. Governing Bd. of Dirs.*,
   859 F. Supp. 2d 728 (D.V.I. 2012) ...................................................................13

*Gov't of U.S.V.I. v. Takata Corp.*,
   No. ST–16–CV–286, 2017 WL 3390594 (Sup. Ct. V.I. June 19, 2017) ...................................9

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)...............................................................................2, 5, 9, 10

*Gunn v. Minton*,
   568 U.S. 251 (2013)................................................................................5, 14, 15

*Gurlea v. Dudley*,
   No. 3:22-cv-0024, 2023 WL 2708988 (D.V.I. Mar. 30, 2023) ...................................6, 13, 15

*Hamed v. Yusuf*,
   No. 2012–099, 2012 WL 5830709 (D.V.I. Nov. 16, 2012).......................................12, 13

*Hartel v. Beazer East, Inc.*,
   No. 2:23-cv-01629, 2025 WL 964007 (W.D. Pa. Mar. 31, 2025) ...........................................12

*Herrold v. Contigroup Cos.*,
   No. 04-00618-CV-W-GAF, 2005 WL 8158999 (W.D. Mo. July 26, 2005) ......................7, 11

*Martin v. Franklin Cap. Corp.*,
   546 U.S. 132 (2005)...........................................................................................4

*Meyer v. Health Mgmt. Assocs., Inc.*,
   841 F. Supp. 2d 1262 (S.D. Fla. 2012) ......................................................................5

*Molloy v. Indep. Blue Cross*,
   56 V.I. 155 (2012)..............................................................................................7

*Phillip v. Marsh–Monsanto*,
   66 V.I. 612 (2017)............................................................................................15

*Police Ass'n of New Orleans v. City of New Orleans*,
   572 F. Supp. 3d 265 (E.D. La. 2021).................................................................8, 10, 11, 17

*Rivet v. Regions Bank of La.*,
   522 U.S. 470 (1998).........................................................................................18

*Rodriguez v. Hovensa, L.L.C.*,
   No. 2012-100, 2014 WL 1308836 (D.V.I. Mar. 31, 2014).....................................................13

*Sickler v. Mandahl Bay Holding Inc.*,
   No. ST–10–CV–331, 2014 WL 3107449 (Sup. Ct. V.I. July 7, 2014)......................................6

*United States v. City of Loveland*,
    621 F.3d 465 (6th Cir. 2010) .........................................................10, 11, 15, 16, 17

*United Jersey Banks v. Parell*,
    783 F.2d 360 (3d Cir. 1986) ...............................................................................5

*Willcox v. Consol. Gas Co. of N.Y.*,
    212 U.S. 19 (1909) ...............................................................................................5

**Statutes**

28 U.S.C. § 1331 .......................................................................................5, 17, 19

28 U.S.C. § 1345 ....................................................................................................17

28 U.S.C. § 1355 ....................................................................................................17

28 U.S.C. § 1367 ......................................................................................................9

28 U.S.C. § 1441 .............................................................................................4, 19

42 U.S.C. § 6973 ....................................................................................................17

42 U.S.C. § 7413 ....................................................................................................17

48 U.S.C. § 1611 ......................................................................................................4

48 U.S.C. § 1612 ......................................................................................................4

12A V.I.C. § 102 ......................................................................................................9

12A V.I.C. § 303 ......................................................................................................9

**Other Authorities**

77 Fed. Reg. 18266 (Mar. 27, 2012)......................................................................7

78 Fed. Reg. 4438 (Jan. 22, 2013) .........................................................................7

Fed. R. Civ. P. 19(a)(1) ........................................................................................16

V.I. R. Civ. P. 19(a)(1)..........................................................................................16

D.V.I. Loc. R. 7.1(d) .............................................................................................20

## INTRODUCTION

Plaintiffs' Motion to Remand (D.I. 47, "Motion" or "Mot.") should be denied because this Court has federal question jurisdiction over Plaintiffs' claims.  Plaintiffs allege that Defendants have created a plastic waste crisis in the Virgin Islands by overwhelming the territory's only landfills and by failing to ensure that their plastic bottles are recycled.  In bringing these claims, Plaintiffs rely on, and their Complaint expressly incorporates, two live federal consent decrees under the ongoing supervision of this District.  These consent decrees are between Plaintiffs and the United States, and they govern the Anguilla and Bovoni landfills—the only two landfills in the U.S. Virgin Islands.  D.I. 1-2 ("Compl.") ¶¶ 32–34; Mot. at 3, 8.  The consent decrees find that the fault and obligations for the asserted waste management crisis lie with Plaintiffs.  In Plaintiffs' own words, the consent decrees "require[] the Virgin Islands to stop accepting waste at Anguilla and Bovoni [landfills] by 2018 and 2019, respectively, and implement mitigation measures, such as recycling programs."  Compl. ¶ 33.  Plaintiffs apparently have not followed through and now seek to pass off their obligations to Defendants to "abate[]" a purported "crisis" of plastic pollution caused by Plaintiffs' own mismanagement of these landfills.  *Id.* ¶ 1, Prayer for Relief ¶ E.

Courts recognize that there is federal jurisdiction over local-law claims that necessarily require the interpretation and application of a federal consent decree, and that principle requires Plaintiffs' claims here to remain in federal court.  Plaintiffs' Complaint necessarily raises federal issues because Plaintiffs' claims and requested relief of abatement cannot be adjudicated without determining Plaintiffs' obligations under—and purported compliance with—the decrees.  These federal issues are disputed, substantial, and wholly appropriate for resolution in federal court.  The United States has sought for years to ameliorate the "dire" "crisis" caused by Plaintiffs' waste mismanagement that presents "imminent and substantial endangerment to health and the

1

environment." Compl. ¶¶ 32–34; Mot. at 3. This action implicates national environmental interests, the authority of the United States to enter into consent decrees, and the power of this Court to enforce them. This dispute thus "sensibly belongs in a federal court." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). Plaintiffs' attempt to delegate their obligations to address the waste management situation in the Virgin Islands to Defendants also amounts to an attempt to amend or attack the federal consent decrees—an independent ground for federal jurisdiction. *See, e.g., Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543, 546 (2d Cir. 2018) (finding federal jurisdiction because "a contrary holding … could allow litigants to use the state courts as a vehicle to undermine a federal court's ability to police its consent decrees").

Plaintiffs' Motion to Remand mischaracterizes Defendants' arguments in support of removal, incorrectly states that Defendants rely on the consent decrees to "insulate[]" themselves from liability, and argues that federal jurisdiction cannot exist because Plaintiffs have pleaded only territorial-law causes of action. *See* Mot. at 6–10. But *Gunn–Grable* jurisdiction exists for precisely this scenario: where a plaintiff has pleaded non-federal causes of action that nonetheless necessarily raise substantial and disputed federal issues. *Grable*, 545 U.S. at 314. These consent decree-related federal issues are not "tangential," as Plaintiffs assert. Mot. at 2. They appear on the face of the Complaint and are at the heart of this dispute.

Because this Court has jurisdiction, Plaintiffs' Motion to Remand should be denied.

## **BACKGROUND**

Plaintiffs' Complaint expressly incorporates and relies on two consent decrees between the Government of the U.S. Virgin Islands, a Plaintiff in this action, and the United States. Compl. ¶¶ 33–34 & n.35, 98. These decrees—approved and overseen by this District—govern the U.S.

Virgin Islands' only two landfills, Anguilla and Bovoni, and originate from an action brought by the United States on behalf of the Environmental Protection Agency against Plaintiffs here.[1]  After decades of Plaintiffs' waste mismanagement, *see* Defendants' Notice of Removal ¶¶ 7 n.3, 15–16, the United States sued Plaintiffs to address the "dire" "waste management crisis" at the Anguilla and Bovoni landfills that "presented imminent and substantial endangerments to health and the environment," Compl. ¶¶ 32–34; *see also* Mot. at 3.

The federal litigation resulted in two consent decrees that require Plaintiffs to implement a "Waste Diversion Program," including "[r]ecycling" programs for the "collection, processing, and sale or distribution of … plastics."  Bovoni Consent Decree ¶¶ 31–33; Anguilla Consent Decree ¶ 36 (same); *see also* Compl. ¶ 33.  The recycling program mandated by the consent decrees applies "to the public on St. Croix to the same extent that it applies to the public on St. Thomas" and must include "education of the public" regarding how "to reduce the amount of solid wastes of various types disposed of at the Landfill" through "outreach to homes, commercial establishments and schools" in the form of "written materials, public service announcements, and group meetings."  Anguilla Consent Decree ¶ 36; Bovoni Consent Decree ¶¶ 31, 33(a)(1).

The obligations imposed by the federal consent decrees are ongoing and "may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change … , it shall be effective only upon approval by the Court."  Anguilla Consent Decree ¶ 100; Bovoni Consent Decree ¶ 96.  This District expressly retained jurisdiction "until termination" of the consent decrees "for the purpose of resolving disputes arising under" the

---

[1] *See* D.I. 1-14 (United States' amended complaint); D.I. 1-10 ("Anguilla Consent Decree"); D.I. 1-11 ("Bovoni Consent Decree"); D.I. 1-12, 1-13 (orders approving consent decrees); *see also* D.I. 1 ("Defendants' Notice of Removal") ¶¶ 9–10 (detailing the history of the United States' action).

decrees, "entering orders modifying" the decrees, and "effectuating or enforcing compliance with the terms" of the decrees.  Anguilla Consent Decree ¶ 99; Bovoni Consent Decree ¶ 95; Mot. at 17.

Plaintiffs apparently have not followed through on their commitments.[2]  Instead, they brought this lawsuit seeking to hold Defendants responsible under theories of public nuisance and consumer deception for a plastic "waste management crisis" in the Virgin Islands allegedly "[d]ue in significant part to Defendants' conduct in falsely promoting and distributing single-use plastic."  Compl. ¶ 32.  Plaintiffs' Complaint alleges that Defendants have contributed to an "explosion of single-use plastic products" and have misled the public about the recyclability of their plastic bottles because "[r]ecycling in the Virgin Islands is particularly difficult and expensive" and historically "was largely nonexistent." *Id.* ¶¶ 31, 98.  Plaintiffs also fault Defendants for Plaintiffs' own failure to close the Anguilla and Bovoni landfills, as required by the decrees.  *See id.* ¶¶ 33–35, 98.  Plaintiffs ask the Court to order Defendants to "abate[]" the alleged public nuisance.  *Id.* Prayer for Relief ¶ E.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant has "the right to remove" any civil action over which this Court has original jurisdiction.[3]  *In re Briscoe*, 448 F.3d 201, 215 (3d Cir. 2006). This right to remove extends to all appropriate actions—not only to "obvious cases," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 140 (2005)—and may not be frustrated by a plaintiff's artful

---

[2] *See United States v. Gov't of the U.S. Virgin Islands*, No. 3:10-cv-00048-RAM-RM (D.V.I. May 5, 2023), D.I. 275, at 6–7 (the Government of the U.S. Virgin Islands stating, in a recent status report, that it has "not closed Anguilla and Bovoni as currently required by the two consent decrees …. Circumstances on the ground and those affecting the Territory … will require … revised deadlines to cease accepting waste at each landfill, and [the U.S. Virgin Islands will] submit the revised schedules to the Court for approval.  The United States will consider any proposal submitted …."); Defendants' Notice of Removal ¶¶ 7 n.3, 15–16.

[3] Section 1441 governs the removal of this action to this Court.  *See* 48 U.S.C. §§ 1611–1612; Defendants' Notice of Removal ¶¶ 21–22, 26 & n.5; Mot. at 5 n.6.

pleading, *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986).  The removing party

may demonstrate that federal jurisdiction is proper by a preponderance of the evidence.  *Centennial*

*Plaza Prop, LLC v. Trane U.S., Inc.*, No. 22-2644, 2024 WL 1254184, at *2 (3d Cir. Mar. 25,

2024); *Meyer v. Health Mgmt. Assocs., Inc.*, 841 F. Supp. 2d 1262, 1266 (S.D. Fla. 2012).

An action that pleads only non-federal causes of action "arises under" federal law for

purposes of 28 U.S.C. § 1331 if a federal issue is "(1) necessarily raised, (2) actually disputed,

(3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state

balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Grable*, 545

U.S. at 313–14).  When removal is proper, the federal court must hear the dispute.  *Cf. Willcox v.*

*Consol. Gas Co. of N.Y.*, 212 U.S. 19, 40 (1909); *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988).

## ARGUMENT

This Court has federal question jurisdiction based on the Complaint's express incorporation

of two federal consent decrees that are central to Plaintiffs' claims.  Defendants do not rely on the

decrees merely as a defense; the decrees appear on the face of the Complaint, and their provisions

are essential to Plaintiffs' causes of action and prayer for relief.  Therefore, the decrees must be

interpreted and applied by the court that adjudicates Plaintiffs' claims and crafts their requested

relief, if any.  Plaintiffs also attempt to circumvent the federal judgments approving the consent

decrees by seeking to delegate their own waste management and recycling-related obligations to

Defendants.  Plaintiffs pretend otherwise, but their requested relief would effectively modify the

consent decrees and impose the obligations to address waste management and educate the public

about how to increase recycling on Defendants instead of Plaintiffs.  A federal court is the proper

forum to adjudicate these substantial federal issues.  Contrary to Plaintiffs' arguments, nothing in

the text of the consent decrees does—or could—prohibit Defendants from removing to this Court.

I.      **Plaintiffs' Claims Seeking to Hold Defendants Responsible for a "Waste Management Crisis" and Incorporating Two Federal Consent Decrees Governing the Territory's Only Two Landfills Necessarily Raise Substantial, Disputed Federal Issues**

   A.      **Plaintiffs' claims necessarily raise federal issues because their purported compliance with the consent decrees is an element of each cause of action**

This Court's task is "to determine whether the real nature of the claim is federal, regardless of [P]laintiff[s'] characterization." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). Plaintiffs argue that their claims do not necessarily raise any federal issues under *Gunn–Grable* because Defendants have merely asserted a "federal defense pertaining to only a portion of [Plaintiffs'] public nuisance claim," and Plaintiffs will not "need or choose to rely on the Decrees for resolution of [their] claims." Mot. at 6–8. Plaintiffs are wrong on both counts, and their effort to distinguish the numerous cases supporting federal jurisdiction here is unavailing.

   1.      **A court cannot adjudicate Plaintiffs' claims without interpreting and potentially modifying the consent decrees**

Plaintiffs try to characterize the need for the Court to interpret, address, and potentially modify the consent decrees as a contention that federal jurisdiction exists because the decrees "insulate[]" Defendants from liability. Mot. at 7–8. Not so. The "necessarily raised" requirement is met here because the Court cannot adjudicate liability and cannot fashion Plaintiffs' requested remedy (an abatement order) without interpreting and applying the terms of the decrees that Plaintiffs invoke in support of their claims. The underlying federal law issues raised by the consent decrees are elements of Plaintiffs' public nuisance and statutory consumer deception claims. *See Gurlea v. Dudley*, No. 3:22-cv-0024, 2023 WL 2708988, at \*4 (D.V.I. Mar. 30, 2023).

With respect to public nuisance (Count Three), "proximate cause is a necessary element which must be established by [Plaintiffs]." *Sickler v. Mandahl Bay Holding Inc.*, No. ST–10–CV–331, 2014 WL 3107449, at \*7 (Sup. Ct. V.I. July 7, 2014). Proximate cause in the Virgin Islands "requires the plaintiff to show that the tort was both the but-for cause of the injury and a substantial

6

factor in bringing about the result." *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 180 n.6 (2012) (cleaned up). Here, the Court cannot assess whether Defendants' distribution and marketing of single-use plastic bottles proximately caused the asserted nuisance of a plastic waste management crisis without interpreting the decrees and making findings about Plaintiffs' compliance with them.

For example, the consent decrees find that Plaintiffs' "manner" of "operat[ion]" of the only two landfills in the Virgin Islands is the cause of "the substantial endangerment to health and the environment." Anguilla Consent Decree ¶ I(E); Bovoni Consent Decree ¶ I(D).[4] This Court could not find in favor of Plaintiffs here without disagreeing with that finding. The consent decrees require Plaintiffs to mitigate waste, implement recycling programs for plastics, and educate the public regarding how to increase recycling. Compl. ¶ 33; Anguilla Consent Decree ¶¶ 24, 36; Bovoni Consent Decree ¶¶ 31, 33. If this Court does not find that Plaintiffs have adequately complied with those requirements, it cannot find that Defendants' conduct was the but-for cause of, or even a substantial factor in bringing about, the asserted public nuisance of "plastic pollution." Compl. ¶ 95. Thus, the consent decrees are not merely "a federal defense." Mot. at 7.

Plaintiffs' request for a court order "providing for abatement of the public nuisance that Defendants created," Compl. Prayer for Relief ¶ E, also necessarily raises a federal question because any abatement order "must be crafted with the requirements of the Consent Decree[s] firmly in mind," *Herrold v. Contigroup Cos.*, No. 04-00618-CV-W-GAF, 2005 WL 8158999, at *2 (W.D. Mo. July 26, 2005). The consent decrees require Plaintiffs to establish a "**Waste**

---

[4] *See also* 77 Fed. Reg. 18266, 18266 (Mar. 27, 2012) (the U.S. Department of Justice stating that its action against the U.S. Virgin Islands sought relief "for the failure by the Government of the Virgin Islands … to operate the Bovoni Landfill … in compliance with" federal law); 78 Fed. Reg. 4438, 4438 (Jan. 22, 2013) (same with respect to the Anguilla Landfill); Defendants' Notice of Removal ¶ 15 (quoting an EPA official as saying: "Yes, [the U.S. Virgin Islands] have made promises to comply, but they have failed to comply with their promises.").

**Diversion Program**," including a "[r]ecycling" program for the "collection, processing, and sale or distribution of … plastics," and a "plan to educate the public" regarding how "to reduce the amount of solid wastes of various types disposed of at the Landfill." Bovoni Consent Decree ¶¶ 31–33; Anguilla Consent Decree ¶ 36; *see also* Compl. ¶ 33 (Plaintiffs describing the "**mitigation measures**" required by the decrees) (emphases added). Yet Plaintiffs' request for an **abatement** order seeks to reallocate Plaintiffs' obligations to these private Defendants, which will require an analysis of the decrees' obligations and whether they can be modified (i.e., delegated).

The decrees require modifications to be "by a subsequent written agreement signed by all the Parties," including the United States; and if the modification is material, it requires this District's approval. Anguilla Consent Decree ¶ 100; Bovoni Consent Decree ¶ 96.[5] The Court therefore cannot grant Plaintiffs' requested relief without assessing whether redistribution of Plaintiffs' obligations is permissible under the decrees, which necessarily raises a federal issue. *See Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 275 (E.D. La. 2021) ("Plaintiffs' state-law efforts to prevent … reforms ordered by this Court necessarily call into question the Court's power to enforce the Consent Decree under [federal law].");  *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law.").

Plaintiffs likewise cannot untangle their statutory causes of action (Counts One and Two) from the consent decrees.[6] Plaintiffs will need to prove that Defendants "engaged in deceptive

---

[5] The decrees also specifically contemplate that Plaintiffs' obligations are nondelegable. *Cf., e.g.*, Anguilla Consent Decree ¶ 4 ("No transfer of ownership or operation of the Landfill … shall relieve [Plaintiffs here] of their obligation to ensure that the terms of the Decree are implemented."); Bovoni Consent Decree ¶ 4 (same).

[6] Plaintiffs do not independently challenge Defendants' argument that, if the Court were to conclude that only Count Three (public nuisance) arises under federal law, Counts One and Two

trade practices in connection with the sale or offering for sale of beverages packaged in single-use plastic bottles in the Virgin Islands," Compl. ¶¶ 89, 91, i.e., that they deceived consumers about the recyclability of their bottles, *see Gov't of U.S.V.I. v. Takata Corp.*, No. ST–16–CV–286, 2017 WL 3390594, at *28, 36 n.304 (Sup. Ct. V.I. June 19, 2017) (citing 12A V.I.C. §§ 102(a), 303(e)). But the decrees mandate that Plaintiffs implement recycling programs for plastics and "educate the public" about how to increase recycling. Bovoni Consent Decree ¶¶ 31, 33; Anguilla Consent Decree ¶¶ 24, 36; Compl. ¶ 33. Thus, the Court cannot assess whether Plaintiffs have proved deception without evaluating the availability of plastics recycling in the U.S. Virgin Islands and local public knowledge regarding recycling practices—necessarily implicating Plaintiffs' compliance with the decrees' mandates. Plaintiffs' statutory claims thus firmly place at issue the decrees' interpretation and application, necessarily raising an additional federal question.

Indeed, the relationship between Plaintiffs' claims and the consent decrees is analogous to the facts of *Grable* itself. There, the plaintiff brought a quiet title action in state court after the IRS seized and sold his property to defendant to satisfy plaintiff's tax delinquency, claiming that the defendant's title was invalid because the IRS had failed to give plaintiff notice as required by federal law. 545 U.S. at 310. The defendant removed, asserting that the title claim depended on the interpretation of federal law, and the Supreme Court upheld removal, explaining: "Whether Grable was given notice within the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning … of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court." *Id.* at 311, 314–15. The Court also made clear that,

---

are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a). *See* Defendants' Notice of Removal ¶¶ 24, 59–64 (arguing in the alternative for supplemental jurisdiction over Counts One and Two). Plaintiffs simply state that, "since none of the allegations raise a federal question, supplemental jurisdiction cannot be supported here." Mot. at 2–3.

even though the IRS was not a party to the litigation, the United States had a "strong" and "direct" interest in a federal forum "to vindicate its own … action." *Id.* at 315.

Like the plaintiff's claim in *Grable*, the Complaint here establishes that Plaintiffs' purported compliance with—and thus the application of—the decrees is an essential element of their causes of action against Defendants. *See supra* pp. 6–9. Further, the United States, as a party to the consent decrees, has a strong, direct interest in a federal forum to vindicate its rights, and this Court has an independent interest in ensuring that this District's orders approving the consent decrees—and its continuing oversight duties—are not forestalled. *See City of New Orleans*, 572 F. Supp. 3d at 275, 277. The decrees' interpretation is thus "an important issue of federal law that sensibly belongs in a federal court." *Grable*, 545 U.S. at 315.

Numerous cases applying *Grable* confirm that a complaint's invocation of federal consent decrees necessarily raises federal issues. In *Police Ass'n of New Orleans v. City of New Orleans*, for example, the district court denied remand of "state-law efforts to prevent the City from implementing reforms ordered by this Court" because plaintiffs' action "essentially allege[d] the promotions provisions of the Consent Decree were beyond the authority of the Court" and thus "necessarily call[ed] into question the Court's power to enforce the Consent Decree." 572 F. Supp. 3d at 275. The court also reasoned that the state-law causes of action necessarily raised a federal issue because the court, as this District did in approving the Anguilla and Bovoni consent decrees, "specifically retained jurisdiction to interpret and enforce the … Consent Decree." *Id.* at 276; *see* Anguilla Consent Decree ¶ 99; Bovoni Consent Decree ¶ 95.

Similarly, in *United States v. City of Loveland*, the United States sued the City of Cincinnati, alleging violations of the Clean Water Act relating to water treatment. 621 F.3d 465, 468 (6th Cir. 2010). The Southern District of Ohio approved consent decrees between the United

States, the Sierra Club, the County Board, and Cincinnati, requiring Cincinnati to address pollution problems in its sewer system by implementing infrastructure improvements. *Id.* Four years later, the City of Loveland indicated its intent to terminate a 1985 agreement with the County Board requiring the Board to repair the sewer system because the Board's fees had increased dramatically due to "the funding necessary to comply with the obligations imposed by the consent decree." *Id.* The Board then sued Loveland for a judgment declaring that Loveland could not unilaterally terminate the 1985 agreement, and Loveland moved to dismiss for lack of subject-matter jurisdiction, claiming that the only dispute was one of Ohio contract law. *Id.* at 496. The Southern District of Ohio denied the motion. *Id.* On appeal, the Sixth Circuit held that the district court had subject-matter jurisdiction because the Board's lawsuit necessarily raised a federal question, explaining: "Because the consent decree applies to the [sewer system], it is impossible to resolve [Loveland's] request to terminate the 1985 Agreement and the Board's request for declaratory relief without analyzing and interpreting the consent decree." *Id.* at 470–73.

Like the claims in *City of New Orleans* and *Loveland*, Plaintiffs' claims here cannot be resolved without analyzing and interpreting the Anguilla and Bovoni consent decrees, which govern the only two landfills on the U.S. Virgin Islands. Mot. at 3; *see also* Compl. ¶ 32. Plaintiffs' purported compliance with the decrees is a necessary element of their prima facie showings, and any abatement order "must be crafted with the requirements of the Consent Decree[s] firmly in mind." *Herrold*, 2005 WL 8158999, at *2; *see also, e.g.*, *Carr v. Ala. Dep't of Hum. Res.*, No. 96–D–1153–N, 1996 WL 795269, at *4 (M.D. Ala. July 30, 1996) ("[T]o allow the plaintiffs to proceed in state court could seriously thwart the purposes of the consent decree.").

### 2.    Plaintiffs' contrary arguments are unavailing

Plaintiffs try to distinguish each case finding federal jurisdiction based on a consent decree by asserting that the defendant there, not the plaintiff, was party to the federal consent decree.

11

Mot. at 5, 10 n.7.  But the propriety of removal does not depend on which litigant is subject to the invoked decree.  In fact, that Plaintiffs are party to the decrees here only *reinforces* that their causes of action necessarily implicate the decrees because Plaintiffs themselves decided to incorporate them front and center when they drafted their Complaint.  In any event, the principles underlying the actions in which a party to a necessarily implicated consent decree successfully removed an action are no less applicable here, where the non-removing party is subject to the decree.  *Cf. Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 29 F. Supp. 3d 808, 859 (E.D. La. 2014) (concluding, after canvassing the caselaw, that "federal law applies to nonparty breach of contract claims where the contract implicated a federal interest, the United States was a party to the contract, and the contract was entered into pursuant to federal law" (cleaned up)).

Plaintiffs also argue that this case is more akin to *Hartel v. Beazer East, Inc.*, No. 2:23-cv-01629, 2025 WL 964007 (W.D. Pa. Mar. 31, 2025), where the court remanded an action involving a federal consent decree.  Mot. at 11–12.  But unlike Plaintiffs' Complaint here, the *Hartel* complaint did not expressly incorporate the consent decree.  *See Hartel*, 2025 WL 964007, at *9 (the district court recognizing, "nor does the Complaint rely upon the Consent Decree"); *Hartel*, No. 2:23-cv-01629, D.I. 1-1 (W.D. Pa. Sept. 11, 2023) (the complaint).  And, unlike in *Hartel*, Defendants here have "link[ed]" the consent decrees to the Complaint's specific causes of action and have explained why, to prevail on their claims, Plaintiffs will need to show that they complied with the decrees' mandates.  2025 WL 964007, at *9; *see also* Defendants' Notice of Removal ¶¶ 32, 56, 59, 62.

Finally, although not cited in Plaintiffs' Motion, this Court's precedents remanding certain actions under *Gunn–Grable* do not support remand here.  In *Hamed v. Yusuf*, for example, this Court remanded after rejecting the defendant's arguments that the plaintiff's claim for breach of a

12

partnership agreement necessarily implicated a federal plea agreement.  No. 2012–099, 2012 WL 5830709, at *2 (D.V.I. Nov. 16, 2012).  But the Court focused on the complaint, which, unlike Plaintiffs' Complaint here that expressly invokes the decrees, did not reference the plea agreement at all.  *Id.* at *3.  Similarly, in both *Rodriguez v. Hovensa, L.L.C.*, No. 2012-100, 2014 WL 1308836 (D.V.I. Mar. 31, 2014), and *Gardiner v. St. Croix District Governing Board of Directors*, 859 F. Supp. 2d 728 (D.V.I. 2012), this Court remanded after concluding that the necessarily raised federal issue was one of two alternative theories of recovery (with the other being grounded solely in state law).  By contrast, Plaintiffs' claims here necessarily and exclusively depend on one plastic-pollution theory and on the resolution of substantial questions of federal law.

Because the consent decrees, expressly incorporated in the Complaint, are relevant and necessary to an element of each asserted cause of action and otherwise inseparable from Plaintiffs' requested relief, the Complaint necessarily raises questions of federal law.

### B. The federal issues are actually disputed and central to the action because they relate to the U.S. Virgin Islands' only two landfills

"All a party must do to satisfy the actual dispute requirement is demonstrate that the federal issue 'necessarily raised' is central and dispositive in the case as opposed to being merely 'incidental,' 'possible,' or 'conjectural.'"  *Gurlea*, 2023 WL 2708988, at *4.

Plaintiffs' only argument on this point is that "the allegations in the Complaint are far more expansive than that portion of Defendants' conduct that causes plastics to end up in the Anguilla and Bovoni landfills."  Mot. at 13.  Specifically, as to Counts One and Two, Plaintiffs contend that "[w]hether Defendants intentionally deceptively advertised … does not at all call the Decrees into dispute."  *Id.*  To succeed on these statutory counts, however, Plaintiffs must put forward evidence about the availability of local plastics recycling and consumers' understanding of recycling, which in turn will require evidence of Plaintiffs' purported compliance with the consent decrees'

mandates that Plaintiffs implement recycling programs for plastics and educate the public about how to increase recycling. *See supra* pp. 8–9.

As to Count Three, Plaintiffs assert that their public nuisance claim "is not limited solely to the effects of Defendants' misrepresentations on [the] Anguilla and Bovoni" landfills, pointing to alleged plastic pollution in Virgin Islands waterways. Mot. at 13 (citing Compl. ¶¶ 92–102). But the Complaint alleges that plastic pollution beyond the boundaries of the Anguilla and Bovoni landfills *is the result of* the landfills having reached capacity. *See, e.g.*, Compl. ¶ 32. Indeed, as Plaintiffs acknowledge, "the *only* two landfills available for … waste generated [in] the U.S. Virgin Islands" are Anguilla and Bovoni, the two landfills governed by the consent decrees. Mot. at 3 (emphasis added); *see also* Compl. ¶ 32.

Therefore, the consent decrees, the landfills they govern, and the federal issues raised by their express incorporation into the Complaint are not "tangential." *Contra* Mot. at 2, 8. They are at the heart of the dispute. Any conduct relating to the manufacture, marketing, sale, or disposition of plastic that Plaintiffs challenge can be resolved only by reference to the consent decrees governing the "only two landfills" in the U.S. Virgin Islands. *Id.* at 3; *see* Compl. ¶ 32.

### C.     The federal issues are substantial to the federal system as a whole because Plaintiffs' claims implicate federal interests

Substantiality in the context of *Gunn–Grable* looks "to the importance of the issue[s] to the federal system as a whole." *Gunn*, 568 U.S. at 260. Plaintiffs do not contest any of the six enumerated reasons outlined in Defendants' Notice of Removal that illustrate why the federal issues raised in the Complaint are substantial. *See* Defendants' Notice of Removal ¶¶ 36–45. Those reasons include the consent decrees' negotiation by federal agencies; the United States' recent reaffirmation in unrelated litigation that state and local law cannot intrude on federal interests, particularly in the environmental context; and the decrees' ratification by the United

States and the U.S. Virgin Islands to ensure compliance with two federal statutes. *Id.* ¶¶ 39, 40, 44. These necessarily raised federal issues are substantial. *Id.* ¶¶ 36–45; *see also Loveland*, 621 F.3d at 472 ("Here, there is a substantial federal interest because … federal agencies negotiated the consent decree[s] … [and] the consent decree[s] [were] intended to comply with a federal statute and impact[] thousands ….").

Plaintiffs focus instead on three related factors: whether the federal issue is "one of pure law," whether the court's resolution of the federal issue will "be controlling in numerous other cases," and whether the United States "has a direct interest in the availability of a federal forum to vindicate its own administrative action."  Mot. at 14 (citing *Gurlea*, 2023 WL 2708988, at *4). But each of these factors supports removal here.

First, Plaintiffs contend that the "interpretation or construction of the Decrees would be intrinsically fact-bound." *Id.*  It is hornbook law, however, that contract interpretation is a question of law. *Erie Ins. Exch. v. V.I. Enters., Inc.*, 264 F. Supp. 2d 261, 263 (D.V.I. 2003) ("[T]he construction or interpretation of unambiguous contracts are questions of law …."); *see also Phillip v. Marsh–Monsanto*, 66 V.I. 612, 624 (2017) (similar).  While the Court may need to assess limited facts related to Plaintiffs' compliance with the consent decrees, at its core, these claims will require the Court to interpret the decrees to assess what they require of Plaintiffs and whether those requirements can be modified to shift these obligations to Defendants.

Second, Plaintiffs argue that the Court's resolution of the federal issues here "will have no effect on any other cases" because only these two consent decrees are at issue.  Mot. at 14.  But the substantiality analysis evaluates the significance of this action to the "federal system as a whole." *Gunn*, 568 U.S. at 260.  This action presents the question of whether entities may use private litigation to reassign their federal consent decree obligations; therefore, it "will have a

broad impact because, depending on the outcome of this litigation, other entities may seek to circumvent consent agreements entered into between the federal government and cities around the nation to enforce [federal law]." *Loveland*, 621 F.3d at 472.

Third, Plaintiffs assert, without explanation, that "the federal government's access to a federal forum" "is plainly not at issue here." Mot. at 14. But the United States has a strong and direct interest in the availability of a federal forum in an action that is intertwined with the consent decrees it entered into to resolve its federal waste management-related claims against the Virgin Islands. Indeed, as Defendants pointed out and as Plaintiffs' Motion to Remand does not dispute, the United States may well be a required but un-joined party to this action pursuant to Federal Rule of Civil Procedure and Local Virgin Islands Rule of Civil Procedure 19(a)(1). *See* Defendants' Notice of Removal ¶ 23 n.4; *id.* ¶¶ 39–40, 42, 44 (demonstrating why the United States has a strong interest in this action); *see also Boyle*, 487 U.S. at 504 ("[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law."). The federal issues necessarily raised by Plaintiffs' decision to expressly incorporate the consent decrees in its Complaint are thus substantial, and the resolution of those issues will impact the federal system as a whole.

**D.    The federal issues are capable of resolution in this Court without disrupting the federal–state (or territorial) balance of power because the decrees stem from a matter already within this Court's jurisdiction**

Plaintiffs contend that this is "a quintessential example of a case in which the Court should exercise its veto power" and decline to proceed with the case because Plaintiffs "seek relief tailored to the circumstances in the U.S. Virgin Islands." Mot. at 15. Not so. This Court may preside over this action without disturbing the federal–territorial balance of power and without swamping the federal courts with litigation rooted in local law because the two consent decrees, "by definition, stem from a matter already within the court's jurisdiction." *Loveland*, 621 F.3d at 472. Indeed, both Congress and this District have already rendered judgment that this Court may hear this

dispute without raising any federalism concerns. *See* D.I. 1-14 ¶ 3 (in the litigation underlying the two decrees, the United States noting in its amended complaint that this District had jurisdiction pursuant to 42 U.S.C. §§ 6973(b), 7413(b) and 28 U.S.C. §§ 1331, 1345, 1355); Anguilla Consent Decree ¶ 99 (this District "retain[ing] jurisdiction over this case until termination of th[e] … Decree"); Bovoni Consent Decree ¶ 95 (same).

Accordingly, "exercis[ing] jurisdiction over this matter would not open the floodgates of litigation that might overwhelm the federal courts." *Loveland*, 621 F.3d at 472. Conversely, remanding this action would upset the federal–territorial balance of power because it would "undermine this Court's ability to oversee and enforce implementation" of the federal consent decrees. *City of New Orleans*, 572 F. Supp. 3d at 278.

## II. Plaintiffs' Complaint Also Attempts to Circumvent Two Federal Court Orders by Delegating Plaintiffs' Obligations to Defendants

Removal is independently proper because Plaintiffs' Complaint amounts to an attempt to circumvent the decrees by trying to delegate Plaintiffs' obligations to Defendants. *See* Defendants' Notice of Removal ¶¶ 28–29, 52–58, 65.[7] Plaintiffs ask the Court to order Defendants to "abate[]" an alleged waste management crisis, Compl. Prayer for Relief ¶ E, which would include imposing on Defendants the very obligations that Plaintiffs agreed to undertake in the decrees. *See* Bovoni Consent Decree ¶¶ 31–33 (requiring Plaintiffs to implement a "Waste Diversion Program," including a "[r]ecycling" program for the "collection, processing, and sale or distribution of …

---

[7] To be clear, Plaintiffs' Complaint expressly incorporates the consent decrees and necessarily raises substantial questions of federal law, requiring the Court to look no further than the face of the Complaint to conclude that federal jurisdiction is proper under *Gunn–Grable*. *See supra* Section I; Defendants' Notice of Removal ¶¶ 26–51. Defendants invoke the artful-pleading exception to the well-pleaded complaint rule only with respect to their additional argument that Plaintiffs' Complaint attempts to circumvent (i.e., collaterally attack) the decrees by delegating their obligations to Defendants. Defendants' Notice of Removal ¶¶ 52–58. Although the Complaint does not literally ask to void the decrees, the Complaint's attempt to pass Plaintiffs' obligations onto other parties, including Defendants, in effect attempts to circumvent the decrees.

plastics," and a "plan to educate the public" about how to increase recycling); Anguilla Consent Decree ¶ 36 (same); *see also* Compl. ¶ 33 (Plaintiffs describing the required "mitigation measures"). As courts have recognized, "an action to obtain relief from a federal judgment presents a general federal question." *Donius v. Cnty. of San Diego*, No. 3:20-cv-01349-WQH-JLB, 2020 WL 13579362, at *5 (S.D. Cal. Sept. 18, 2020) (quoting *Eyak Native Vill. v. Exxon Corp.*, 25 F.3d 773, 778 (9th Cir. 1994)).

Plaintiffs' Complaint also attempts to undermine the decrees in additional ways. For example, despite agreeing in the decrees to implement waste diversion programs, including recycling, Plaintiffs now assert that recycling plastic in the territory is nearly impossible. *See* Defendants' Notice of Removal ¶ 56; Compl. ¶ 31 ("Recycling in the Virgin Islands is particularly difficult and expensive."). As another example, although Plaintiffs promised in the decrees "to educate the public regarding" how "to reduce the amount of solid wastes … disposed of at the Landfill," Bovoni Consent Decree ¶¶ 31, 33(a)(1), Anguilla Consent Decree ¶ 36, Plaintiffs' Complaint now asserts that primarily "volunteers" and "nonprofit organizations undertake the burdensome task of collecting and sorting potentially recyclable materials," Compl. ¶ 31.

Plaintiffs' efforts to subvert the decrees are sufficient to warrant removal independent of *Gunn–Grable*. *See, e.g. Baccus v. Parrish*, 45 F.3d 958, 960 (5th Cir. 1995) ("Federal jurisdiction is proper where a claim brought in state court seeks to attack or undermine an order of a federal district court.");[8] *Bartlett*, 737 F. App'x at 546 (finding federal jurisdiction because "a contrary holding … could allow litigants to use the state courts as a vehicle to undermine a federal court's

---

[8] *Baccus* was not abrogated by the Supreme Court's decision in *Rivet v. Regions Bank of Louisiana*, which held that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal." 522 U.S. 470, 478 (1998). *Rivet* speaks only to the affirmative defense of claim preclusion—which Defendants do not raise here—and not to the principle underlying *Baccus*, the protection of the federal courts' judgments and jurisdiction.

ability to police its consent decrees").

Plaintiffs' argument to the contrary has no merit.  Plaintiffs argue that "Defendants' conduct alleged in the Complaint is far greater than just that which relates to these two landfills." Mot. at 16.  That is not an accurate characterization of the Complaint.  *Supra* pp. 1–4.  But even if it were, that the Complaint challenges additional conduct beyond the scope of the decrees does not mean that the Complaint does not *also* attempt to undermine the decrees with respect to the challenged conduct within their scope.  Plaintiffs also fail to specify what additional conduct the Complaint challenges—other than Defendants' alleged contributions to the "waste management crisis" in the Virgin Islands that squarely implicates the decrees. Compl. ¶¶ 32, 98.  Because the Complaint attempts to circumvent the decrees in multiple ways, removal is proper.

### III.    The Text of the Consent Decrees Does Not (and Cannot) Prohibit Removal Because Defendants Were Not Party to the Litigation that Produced the Decrees

Plaintiffs argue the decrees do not limit Plaintiffs' "ability to seek relief in [their] own [c]ourt" because the decrees provide that they "shall not be construed to create rights in, or grant any cause of action to, any third party not party to [the decrees]."  Mot. at 17.  This argument is incorrect.  Defendants do not assert that the decrees create a separate cause of action or a new right to remove.   Instead, Plaintiffs' own Complaint invokes and relies on the consent decrees, necessarily raising federal issues under *Gunn–Grable* and 28 U.S.C. §§ 1331 and 1441.

Nor could the decrees deprive Defendants of their "right to remove" this action.   *In re Briscoe*, 448 F.3d at 215.  Whether viewed through the lens of contract law or as the effect of a judgment, Defendants cannot be bound, and their removal rights cannot be limited, by a contract or judgment to which they are not parties.  *See, e.g.*, *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Brusewski v. United States*, 181 F.2d 419, 422 (3d Cir. 1950) ("[O]nly parties and privies are bound by a prior

judgment ….").[9] Plaintiffs have not asserted that Defendants are in privity with the United States or that any exception to the foundational principle against binding nonparties applies. The consent decrees therefore do not and cannot limit Defendants' right to remove.

## CONCLUSION

Federal courts repeatedly exercise jurisdiction over claims that require interpretation and application of federal consent decrees. This is such a case. The Complaint invokes and relies on two decrees between Plaintiffs and the United States—governing the *only* two landfills for plastic waste disposal in the U.S. Virgin Islands—that impose on Plaintiffs the obligation to mitigate plastic waste and implement recycling programs. The elements of Plaintiffs' claims, as well as Plaintiffs' requested remedy of abatement of the alleged nuisance, are inseparable from the interpretation and application of the consent decrees. Because federal question jurisdiction exists over Plaintiffs' claims, the Court should deny Plaintiffs' Motion to Remand.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Defendants PepsiCo, Inc. and PepsiCo Caribbean, Inc. hereby respectfully request oral argument on Plaintiffs' Motion to Remand.

---

[9] The principle that a contract or a judgment cannot in general bind nonparties is distinct from the ability of a nonparty to a consent decree to remove a Complaint that expressly and necessarily raises federal questions relating to the decree. *See supra* pp. 11–12.

Dated: July 23, 2025

Respectfully submitted,

By: _____

Andrew C. Simpson, Esq.
V.I. Bar No.: 451
**Andrew C. Simpson, P.C.**
2191 Church St., Ste. 5
Christiansted, St. Croix
U.S. Virgin Islands 00820
Tel.: (340) 719-3900
asimpson@coralbrief.com

Andrew S. Tulumello (admitted *pro hac vice*)
Arianna M. Scavetti (admitted *pro hac vice*)
Claire L. Chapla (admitted *pro hac vice*)
**Weil, Gotshal & Manges LLP**
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone:  (202) 682-7000
Facsimile:  (202) 857-0940
Email:  drew.tulumello@weil.com
Email:  arianna.scavetti@weil.com
Email:  claire.chapla@weil.com

*Counsel for Defendants PepsiCo, Inc. and
PepsiCo Caribbean, Inc.*